160 P.3d 703

STATE of Hawai'i, Plaintiff–Appellee,

v.

Adam RUGGIERO, Defendant–Appellant.

No. 26940.

Supreme Court of Hawai'i.

June 5, 2007.

228

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee State of Hawai'i.

Deborah L. Kim and Marcus L. Landsberg IV, Deputy Public Defenders, on the briefs, for the defendant-appellant Adam Ruggiero.

LEVINSON, J., with whom DUFFY, J. joins; NAKAYAMA, J., Concurring and Dissenting, with whom MOON, C.J., joins; and ACOBA, J., Concurring and Dissenting Separately.

Opinion by LEVINSON, J.

The defendant-appellant Adam Ruggiero appeals from the September 30, 2004 judgment and sentence of the district court of the second circuit, the Honorable Douglas H. Ige presiding, convicting him of operating a vehicle under the influence of an intoxicant [hereinafter, "DUI"], in violation of Hawai'i Revised Statutes (HRS) § 291E–61 (Supp.2003), *see infra* note 10.

On appeal, Ruggiero asserts that the district court erred in sentencing him as a repeat offender, pursuant to HRS § 291E–61(b) and (c), *see infra* note 10, inasmuch as nine days after his DUI arrest but prior to his conviction and sentencing, this court, in summary disposition order (SDO) No. 25671 (March 19, 2004) [hereinafter, "SDO No. 25671"], reversed his previous January 29, 2003 DUI conviction, thereby, Ruggiero alleges, removing the basis for the enhanced penalty.

For the reasons discussed *infra* in section III, we hold that the language set forth in HRS § 291E–61(c), *see infra* note 10, manifests a clear legislative intent to create a status offense in HRS § 291E–61 and, therefore, that it was not a violation of Ruggiero's due process rights, guaranteed by section 1 of the fourteenth amendment to the United States Constitution [1] and article I, section 5 of the Hawai'i Constitution [2] to sentence him as a second-time offender on the basis of a prior conviction that was valid at the time of his arrest for the present offense.

However, in keeping with the due process protections articulated in *State v. Cummings*, 101 Hawai'i 139, 142–43, 63 P.3d 1109, 1112–13 (2003), *State v. Israel*, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995), and *State v. Schroeder*, 76 Hawai'i 517, 525, 880 P.2d 192, 200 (1994), *see infra* section III.C.5, in order for his conviction and sentencing as a second-

time offender to be valid, Ruggiero's prior conviction, as an essential element of the offense charged, had to be alleged in the complaint and proven beyond a reasonable doubt at trial. Insofar as the complaint in the present matter failed to allege Ruggiero's prior conviction, it was insufficient to charge Ruggiero with a violation of HRS § 291E–61(a) and (b)(2) as a second-time offender. We therefore vacate his conviction of and sentence for driving under the influence for the second time within a five-year period, in violation of HRS § 291E–61(a) and (b)(2) and remand to the district court for the entry of a judgment of conviction for driving under the influence of an intoxicant with no prior offenses, in violation of HRS § 291E–61(a) and (b)(1), *see infra* note 10, and sentencing in accordance therewith. *State v. Elliott*, 77 Hawai'i 309, 313, 884 P.2d 372, 376 (1994). We affirm the district court's judgment with respect to Ruggiero's convictions of the infractions alleged in Counts II, III, and IV of the complaint, none of which Ruggiero appealed, *see infra* note 3.

## I. BACKGROUND

On March 10, 2004—while his appeal of a January 29, 2003 conviction for operating a vehicle under the influence of an intoxicant, in violation of HRS § 291E–61(a)(1) (Supp. 2002), was pending before this court—Ruggiero was again arrested for DUI. Nine days later, on March 19, 2004, we reversed the January 29, 2003 conviction on the grounds that the prosecution failed to prove an essential element of the offense.

Following from the March 10, 2004 arrest, on April 19, 2004, Ruggiero was charged by complaint with, *inter alia*, DUI (Count I), in violation of HRS § 291E–61 (Supp.2003), *see infra* note 10.[3] On September 8, 2004, the

---

1. The fourteenth amendment, section 1, provides in relevant part that "[n]o State shall ... deprive any person of ... liberty, or property, without due process of law."

2. Article I, § 5 provides in pertinent part that "[n]o person shall be deprived of ... liberty or property without due process of law."

3. The portion of the complaint charging Ruggiero with DUI (Count I) reads in its entirety:

That on or about the 10th day of March, 2004, in the Division of Wailuku, County of Maui, State of Hawai['Ji, ADAM M. RUGGIERO did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant in

district court of the second circuit, the Honorable Douglas H. Ige presiding, conducted a trial and convicted Ruggiero, *inter alia*, of that charge.

The district court then proceeded to the sentencing phase of the trial, whereupon the plaintiff-appellee State of Hawai‘i [hereinafter, "the prosecution"] moved for an enhanced sentence based on the prior January 29, 2003 conviction. After a conference in chambers, the district court made the following statement:

> [Ruggiero]'s co-counsel[ ] brought to the Court's attention that the conviction that the prosecution is relying on for [DUI] that occurred on October 6, 2002 whereby the defendant was convicted on January 29, 2003, had been appealed and the Supreme Court by summary disposition order reversed the conviction [on March 19, 2004].
>
> So the defense was arguing that, accordingly, it should not be considered as a prior conviction. There is a provision, however, in [HRS § ]291[E-]61(c), whereby it states that any judgment on a verdict of a finding of guilty ... that at the time of the offense has not been expunged by pardon, reverse[d], [or] set aside shall be deemed a prior conviction under this section.
>
> The question now is the legal [e]ffect of that statutory provision. Because the reversal took place on March ... 19, 2004.... And the date of this violation was March 10, 2004, nine days earlier. So at the time of the commission of this offense, that conviction had not been reversed by the Supreme Court.

The district court then continued the sentencing hearing to allow both parties to brief the issue of whether Ruggiero's prior conviction could serve as the basis for an enhanced sentence as a repeat offender, pursuant to HRS § 291E–61(c), *see infra* note 10. In his

violation of Section 291E–61 of the Hawai[']i Revised Statutes.

Inasmuch as Ruggiero does not appeal his conviction of and sentence for driving without no-fault insurance, in violation of HRS § 431:10C–104(a) (Count II), driving a motor vehicle with delinquent tax, in violation of HRS § 249–11 (Count III), and failure to signal, in violation of HRS § 291C–84(b) (Count IV), we affirm the

memorandum in opposition, Ruggiero argued only that the language of the statute was ambiguous and that the ambiguity should therefore be construed in his favor.[4]

At the September 30, 2004 hearing, Ruggiero reiterated the argument set forth in his memorandum. The district court asked Ruggiero's counsel whether any other arguments came to mind:

> The Court: [I]s there anything outside the clear reading of the statute ...
>
> . . . .
>
> . . .
>
> —constitutional grounds, anything else that would prevent the Court from ... applying the clear reading of the statute[?]
>
> Counsel: Just, your Honor, in the interest of justice and fairness the first conviction should not count as it was overturned before this current conviction. . . .
>
> First, he already completed classes and other requirements for the first conviction that was overturned, even though it was overturned. He has faced those penalties already for that offense.
>
> Second, your Honor, the legislative history does not indicate a reason for the language of the statute at issue. So, basically, your Honor, he is punished for the first offense, although it's overturned. Now he faces a second conviction and a second conviction penalties.
>
> Your Honor, the legislature may have intended that the language of the statute provides notice to defendants about their convictions so that they can conform their behavior, but here Mr. Ruggiero had a valid issue for appeal and believed he would win on appeal[;] therefore he wasn't on notice that he would be facing a second conviction penalty.
>
> . . . .

district court's judgment and sentence regarding those counts.

4. The only argument that conceivably was not based on statutory construction asserted that "[i]n the interests of justice, [Ruggiero]'s current conviction should be considered his first offense."

The Court: Well, you're making the arguments that you made in your . . . written—I don't need you to read it back to me . . . . So, anything else?

Counsel: No, your honor.

(Some capitalization altered.) The district court then concluded that

[o]n the clear reading of [HRS § 291E–61(c) ] when the defendant committed this offense it would have been his second. There was a previous conviction that had not yet been overturned by the appellate courts.

. . . .

The Court believes that that reading of that statute is clear. It's not ambiguous. And at the time of the commission of this offense on March 10, 2004, the conviction of the previous [DUI] [that] occurred on October 6, 2002[,] resulting in conviction on January 29th, 2003[,] had not been set aside.

[T]he Court has not been cited [and no] argument has been made to the Court . . . whereby any statutory or constitutional provision or requirement would prevent the Court from . . . interpreting or applying the statute as it clearly reads in the statute.

So the Court will find that this offense is the second offense for the defendant within a five year period under [HRS § ]291E–61.

The court proceeded to sentence Ruggiero, as a second-time offender, to fines, fourteen days in jail, and a one-year license suspension.

Ruggiero filed a timely notice of appeal on October 29, 2004.

## II. STANDARD OF REVIEW

 "[T]he interpretation of a statute `. . . is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) . . . .

*Gray v. Admin[.] Dir[.] of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) . . . . "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Koch,* 107 Hawai'i 215, 220–21, 112 P.3d 69, 74–75 (2005) (some internal citations omitted) (some brackets and ellipses added and some in original) (quoting *State v. Kaua,* 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003) (quoting *State v. Rauch,* 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))). Nonetheless, absent an absurd or unjust result, *see State v. Haugen,* 104

Hawai'i 71, 77, 85 P.3d 178, 184 (2004), this court is bound to give effect to the plain meaning of unambiguous statutory language and may only resort to the use of legislative history when interpreting an ambiguous statute. *State v. Valdivia*, 95 Hawai'i 465, 472, 24 P.3d 661, 668 (2001).

### III. *DISCUSSION*

#### A. *Ruggiero Failed To Preserve His Constitutional Arguments For Appeal.*

In opposing the imposition of a repeat-offender sentence, Ruggiero relied virtually exclusively on statutory arguments, principally that HRS § 291E–61(c), *see infra* note 10, was ambiguous. As we have noted, his only departure from that line of argument, raised in his memorandum in opposition to the enhanced sentence and again at the September 30, 2004 sentencing hearing, was that "the interest of justice and fairness" weighed against his vacated conviction being used as the basis for sentencing him as a second-time offender.

█ Ruggiero contends that the invocation of "justice and fairness" is sufficient to preserve for appeal constitutional grounds for vacating the district court's September 30, 2004 judgment and sentence. (Quoting *Lisenba v. California*, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), for the proposition that "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice.") In so arguing, Ruggiero essentially contends that the invocation was sufficient to put the district court on notice that he was arguing that his right to due process was violated by the enhanced sentence. The record reflects, however, that the district court gave him ample opportunity to articulate a due process ground with specificity. Inasmuch as Ruggiero was represented by counsel and failed

to invoke, either in his brief or in oral argument, the protections of either the United States or Hawai'i Constitutions, to accept Ruggiero's contentions (1) that the district court erred in its ruling on his purported constitutional arguments and (2) that he adequately preserved those arguments for appeal would be to conclude that virtually any invocation of basic fairness is sufficient to preserve virtually any conceivable constitutionally-based argument for appeal.

We hold that Ruggiero failed to preserve the constitutional arguments for appeal and, therefore, we may only reach the merits of his arguments by noticing plain error on the district court's part. *See* HRPP Rule 52(b); *In re John Doe, Born on January 25, 1985*, 102 Hawai'i 75, 87, 73 P.3d 29, 41 (2003); *State v. Jenkins*, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000); *State v. McGriff*, 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (this court may *sua sponte* notice plain errors that affect a defendant's substantial rights).

#### B. *The Parties' Arguments Regarding The Enhanced Sentence*

##### 1. *Ruggiero's argument*

Ruggiero proposes that the district court erred in premising his sentence on the commission of a second offense within a five-year period, pursuant to HRS § 291E–61(b)(2), *see infra* note 10, because the prior conviction was a nullity due to constitutional defects. He asserts that sentencing him according to the provisions set forth for second-time offenders "denies [him] his Due Process and Double Jeopardy rights" under the fifth and fourteenth amendments to the United States Constitution [5] and Article I, §§ 5 and 10 of the Hawai'i Constitution.[6] (Citing *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996).)

Ruggiero contends that HRS § 291E–61 is a purely recidivist statute and that the dis-

---

5. The fifth amendment to the United States Constitution provides in relevant part that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb; ... nor be deprived of life, liberty, or property, without due process of law...." The fourteenth amendment is set forth in relevant part *supra* in note 1.

6. Article I, § 10 provides that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy." Effective November 2, 2004, Article I, § 10 was amended by Senate Bill No. 2851 in respects immaterial to the present matter by voters in a general election. *See* 2004 Haw. Sess. L., at 1085. Article I, section 5 is set forth *supra* in note 2.

trict court erred by failing to follow the sentencing procedure prescribed by the Intermediate Court of Appeals (ICA) in *Sinagoga*, 81 Hawai'i at 447, 918 P.2d at 254, for the ordinary sentencing of repeat offenders, which he contends requires that the sentencing court confirm that any prior convictions upon which an enhanced sentence will be based are valid at the time of sentencing. He maintains that under a straightforward recidivist statute, due process requires that enhanced sentences be based on convictions that are valid at the time of sentencing.[7] (Citing *State v. Veikoso*, 102 Hawai'i 219, 74 P.3d 575 (2003); *State v. Shimabukuro*, 100 Hawai'i 324, 60 P.3d 274 (2002); *State v. Hahn*, 238 Wis.2d 889, 618 N.W.2d 528, 535 (2000).)

### 2. *The prosecution's arguments*

The prosecution asserts that, by amending HRS § 291E–61(c) to require the sentencing court to treat the time of commission of the subsequent offense as the touchstone for determining the validity of prior convictions for sentencing purposes, the legislature clearly intended to create a status offense. There-

fore, the prosecution argues, the underlying predicate conviction need only be valid at the time of the commission of the subsequent offense, regardless of whether the underlying conviction is later vacated.[8] (Citing *State v. Lobendahn*, 71 Haw. 111, 113, 784 P.2d 872, 873 (1989).) This reading of HRS § 291E–61, the prosecution maintains, comports with the legislative intent to deal harshly with "scofflaws" who reoffend while appealing previous DUI convictions. (Quoting Sen. Stand. Comm. Rep. No. 1185, in 2003 Senate Journal, at 1523.)

C. *While The District Court Did Not Plainly Err In Applying HRS § 291E–61(c), It Plainly Erred In Convicting And Sentencing Ruggiero As A Second–Time Offender.*

1. *A status offense statute requires only that the conviction be valid at the time of the commission of the subsequent violation.*

■ Conviction of or imposition of sentence for a "status" offense, in which one element of the offense is the status of the

---

7. In *dictum*, the ICA in *Sinagoga* concluded that, "where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence," 81 Hawai'i at 447, 918 P.2d at 254, Hawai'i courts must thereinafter follow a five-step procedure: (1) the court must supply both parties with any relevant presentence reports implicating prior criminal convictions; (2) the defendant must alert the court to any prior convictions that were allegedly uncounseled, "otherwise invalidly entered," and/or "not against the defendant"; (3) the court must inform the defendant that any prior convictions not challenged at this stage are deemed valid and cannot later be raised, absent good cause, to attack the court's sentence; (4) "with respect to each reported prior conviction that the defendant challenges, the [Hawai'i Rules of Evidence] shall apply and the court shall expressly decide before the sentencing whether the [prosecution has] satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true"; and (5) "if the court is aware of the defendant's prior ... invalid criminal conviction[ ], it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it ... as a basis for the imposition or enhancement of a prison sentence." *Id.* at 447, 918 P.2d at 254.

Nevertheless, recognizing that the ICA, in permitting defendants to challenge any previous conviction "otherwise invalidly entered," was opening the door to collateral attacks on prior convictions "whenever the validity of a conviction is challenged," this court, in *State v. Veikoso*, 102 Hawai'i 219, 226 n. 8, 74 P.3d 575, 582 n. 8 (2003), expressly directed that the language "otherwise invalid criminal conviction" be disregarded.

8. *Black's Law Dictionary* 400 (8th ed.2004) defines a "status crime" as "[a] crime of which a person is guilty by being in a certain condition or of a specific character." A status offense therefore generally includes, as a material element, a particular condition or characteristic that renders otherwise potentially legal behavior illegal. *See, e.g.,* HRS § 134–7 (Supp.2006), which provides in pertinent part that "[n]o person who is a fugitive from justice or is a person prohibited from possessing firearms or ammunition under federal law shall own, possess, or control any firearm or ammunition therefor." In *State v. Lobendahn*, 71 Haw. 111, 113, 784 P.2d 872, 873 (1989), a conviction under HRS § 134–7 (1985) remained valid despite the underlying predicate felony conviction being overturned later on appeal. *See* discussion *infra* in section III.C.1.

defendant *at the time of the alleged violation,* does not require that the conviction *continue* to be valid at the time of sentencing. *See Lobendahn,* 71 Haw. at 113, 784 P.2d at 873, *quoted in Veikoso,* 102 Hawai'i at 227 n. 5, 74 P.3d at 583 n. 5 ("In *Lobendahn* we held that, inasmuch as the statute created a 'status offense,' the subsequent invalidation of the predicate felony conviction did not affect the validity of the criminal possession charge because the defendant was 'a convicted felon at the time he possessed the firearm and ammunition. Such possession was unlawful and the subsequent reversal of the conviction does not then render such possession lawful.' "). But *see United States v. Bagley,* 837 F.2d 371, 374–75 (9th Cir.1988) (concluding that a prior felony conviction obtained in violation of federal constitutional rights can-not serve as the basis for a subsequent conviction under a federal law prohibiting felons from possessing firearms).

> 2. *Under a purely recidivist statute, a conviction must continue to be valid at the time of adjudication and sentencing.*

■ Purely recidivist statutes address repeat offender behavior by increasing the punishment for every subsequent violation. *See Shimabukuro,* 100 Hawai'i at 330, 60 P.3d at 280 (Levinson, J., concurring) (noting that HRS § 291–4(b) (Supp.1998) [9] "created an escalating sentencing scheme keyed to the defendant's degree of recidivism"); *id.* at 333, 60 P.3d at 283 (Nakayama, J., dissenting) (noting that HRS § 291E–61 (Supp. 2001) [10] resembled a recidivist statute in that

9. At the time of the decision in *Shimabukuro,* HRS § 291–4(b) provided in pertinent part:

A person committing the offense of driving under the influence of intoxicating liquor shall be sentenced as follows ...:
(1) For the first offense, or any offense not preceded within a five-year period for a conviction under this section, by:
(A) A fourteen-hour minimum alcohol abuse rehabilitation program ...; and
(B) Ninety-day prompt suspension of license ...; and
(C) Any one or more of the following:
(i) Seventy-two hours of community service work;
(ii) Not less than forty-eight hours and not more than five days of imprisonment; or
(iii) A fine of not less than $150 but not more than $1,000.
(2) For an offense which occurs within five years of a prior conviction under this section, by:
(A) Prompt suspension of license for a period of one year ...;
(B) Either one of the following:
(i) Not less than one hundred hours of community service work; or
(ii) Not less than forty-eight consecutive hours but not more than fourteen days of imprisonment ...; and
(C) A fine of not less than $500 but not more than $1,500.
(3) For an offense which occurs within five years of two prior convictions under this section, by:
(A) A fine of not less than $500 but not more than $2,500;
(B) Revocation of license for a period of not less than one year but not more than five years; and
(C) Not less than ten days but not more than thirty days imprisonment. ...

10. HRS § 291E–61 (Supp.2001) provided in relevant part that:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
....
(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
(1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section ...:
(A) A fourteen-hour minimum substance abuse rehabilitation program ...;
(B) Ninety-day prompt suspension of license ...;
(C) Any one or more of the following:
(i) Seventy-two hours of community service work;
(ii) Not less than forty-eight hours and not more than five days of imprisonment; or
(iii) A fine of not less than $150 but not more than $1,000[.]
....
(2) For an offense that occurs within five years of a prior conviction for an offense under this section ... by:
(A) Prompt suspension of license ... for a period of one year ...;
(B) Either one of the following:
(i) Not less than two hundred forty hours of community service work; or
(ii) Not less than five days but not more than fourteen days of imprisonment ...;
(C) A fine of not less than $500 but not more than $1,500[.]

"the amended version includes, in its plain language, a 'multiplier' effect or enhanced sentencing" for the repeat offender).

In contrast to a status offense, under a purely recidivist statute, if a conviction was valid at the time of the commission of a subsequent offense but was later invalidated prior to adjudication of the subsequent offense, the defendant's conviction for that subsequent offense may not be based on the vacated conviction. *See Shimabukuro*, 100 Hawai'i at 330–32, 60 P.3d at 280–82 (Levinson, J., concurring) (reasoning that, inasmuch as at the time of adjudication of the habitual DUI offense at issue, one of the defendant's prior DUI convictions had been vacated, he could therefore not be convicted of habitual drunk driving—as to which three prior convictions was a requisite attendant circumstance—because, in light of the vacated conviction, *at the time of adjudication* he had been lawfully convicted of DUI only twice).[11]

In *Veikoso*, this court characterized the *Shimabukuro* analysis as follows:

> . . . .
> (3) For an offense that occurs within five years of two prior convictions for offenses under this section . . .:
> (A) A fine of not less than $500 but not more than $2,500;
> (B) Revocation of license . . . to operate a vehicle for a period not less than one year but not more than five years;
> (C) Not less than ten days but not more than thirty days imprisonment . . .
> (4) For an offense that occurs within ten years of three or more prior convictions for offenses under this section . . .:
> (A) Mandatory revocation of license . . . for a period of not less than one year but not more than five years;
> (B) Not less than ten days imprisonment . . .;
> . . . .
> *An offense under this paragraph is a class C felony.*

(Emphasis added.) As discussed *infra*, effective January 1, 2004, the legislature amended HRS § 291E–61 by excising the class C felony offense for a fourth offense within ten years provided for in HRS § 291E–61(b)(4) and creating a separate offense of habitual drunk driving codified at HRS § 291E–61.5, *see infra* note 13. *See* 2003 Haw. Sess. L. Act 71, §§ 1, 3, and 7 at 123–27.

Central to the analysis of the present matter, the 2003 amendments also enacted two key changes in HRS § 291E–61. HRS § 291E–61(b)(4) was amended to read:

> Any person eighteen years of age or older who is convicted under this section and who operat-

[c]entral to the judgment in *Shimabukuro* . . . was the fact that the defendant . . . had succeeded in having one of his prior convictions *vacated by the rendering court prior to entering his . . . guilty plea . . . .* A majority of this court agreed . . . that the vacated conviction could not be used to establish culpability. . . .

102 Hawai'i at 222, 74 P.3d at 578. We further reasoned in *Veikoso* that,

> [w]here a defendant succeeds in having a prior conviction expunged, reversed, or set aside, its use in connection with proceedings relating to subsequent offenses will be limited. Similarly, a defendant who succeeds in having prior convictions expunged, reversed, or set aside *after* they have been used to support guilt or enhance punishment in subsequent proceedings may have a basis for attacking that subsequent conviction or enhanced punishment.

*Id.* at 226–27, 74 P.3d at 582–83 (emphasis in original).[12] If a defendant who succeeds *af-*

> ed a vehicle with a passenger, in or on the vehicle, who was younger than fifteen years of age, shall be sentenced to an additional mandatory fine of $500 and an additional mandatory term of imprisonment of forty-eight hours; provided that the total term of imprisonment for a person convicted under this paragraph and paragraph (1), (2), or (3) shall not exceed thirty days.

In addition, HRS § 291E–61(c) was amended to add the underscored language:

> Notwithstanding any other law to the contrary, any:
> (1) Conviction under this section . . .:
> . . . .
> shall be considered a prior conviction for the purposes of imposing sentence under this section. Any judgment on a verdict or a finding of guilty, a plea of guilty or nolo contendere, or an adjudication in the case of a minor, that at the time of the offense has not been expunged by pardon, reversed, or set aside shall be deemed a prior conviction under this section.

11. In fact, Justice Levinson's concurring opinion in *Shimabukuro* expressly distinguished the recidivist nature of the statute at issue, HRS § 291–4.4, *see infra* note 14, from a status offense, such as the one set forth in HRS § 134–7, *see supra* note 8, and analyzed in *Lobendahn*. *See Shimabukuro*, 100 Hawai'i at 330 n. 3, 60 P.3d at 280 n. 3.

12. This conclusion is supported by *Hahn*, 238 Wis.2d 889, 618 N.W.2d 528, upon which this

*ter sentencing* in having a prior conviction expunged or vacated "may have a basis for attacking that subsequent conviction or enhanced punishment," *id.*, it follows, *a fortiori*, that a defendant who, *at sentencing*, has, through direct appeal, succeeded in having a prior conviction vacated as constitutionally defective, has grounds for opposing an enhanced sentence based upon that invalid conviction.

> 3. *HRS § 291E–61 (Supp.2001), a recidivist statute, required that any necessary prior convictions be valid at the time of adjudication and sentencing, but the 2003 amendments transformed HRS § 291E–61(b)(1) to (3) into status offenses.*

HRS § 291E–61 (Supp.2001), see supra note 10, "created an escalating sentencing scheme keyed to the defendant's degree of recidivism," *Shimabukuro*, 100 Hawai'i at 330, 60 P.3d at 280 (Levinson, J., concurring), and was devoid of language indicating, for purposes of sentencing, that any prior conviction upon which the sentence was premised need only be valid at the time of the commission of the subsequent offense. Therefore, consistent with *Shimabukuro* and *Veikoso*, pursuant to HRS § 291E–61(b) (Supp.2001),

any prior convictions to which a defendant's punishment was pegged would necessarily have had to be viable at the time of adjudication and sentencing.

In 2003, however, the legislature manifested a clear intent to transform HRS § 291E–61(b)(1) to (3) into three separate status offenses by adding the following language to HRS § 291E–61(c): "Any judgment on a verdict or a finding of guilty . . . that *at the time of the offense* has not been expunged by pardon, reversed, or set aside shall be deemed a prior conviction under this section." (Emphasis added.)

The conclusion that the legislature intended that HRS § 291E–61(b)(1) to (3) be treated as status offenses is reinforced by the legislative history surrounding the creation, through the same legislation, of the separate offense of habitual intoxicated driving: As part of the 2003 amendments, the legislature excised the class C felony for four convictions within ten years set forth in HRS § 291E–61(b)(4), *see supra* note 10, and renumbered it as a wholly separate offense, entitled "Habitually operating a vehicle under the influence of an intoxicant," codified at HRS § 291E–61.5.[13] The Senate expressly indicat-

---

court relied in part in *Veikoso:* in *Hahn*, the Wisconsin Supreme Court reasoned that " '[i]f the offender succeeds [in challenging the validity of a prior conviction in an appropriate forum], the offender may seek to reopen a sentence imposed as a persistent repeater under [the Wisconsin recidivist statute] if that sentence was based on a vacated conviction.' " 102 Hawai'i at 227, 74 P.3d at 583 (quoting *Hahn*, 618 N.W.2d at 535).

13. HRS § 291E–61.5 (Supp.2003) provided in pertinent part that:

(a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

(1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and

(2) The person operates or assumes actual physical control of a vehicle:

(A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

. . . .

(b) For the purposes of this section:

"Convicted three or more times for offenses of operating a vehicle under the influence"

means that, *at the time of the behavior for which the person is charged under this section, the person had* three or more times within ten years of the instant offense:

(1) *A judgment on a verdict* . . . . for a violation of this section or [HRS §§ ]291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001;

. . . .

*that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside.* All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.

A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant.

(c) Habitually operating a vehicle while under the influence of an intoxicant is a class C felony.

. . . .

(Emphases added.) Effective September 1, 2004, the legislature added "; or [HRS

ed that it was creating a status offense in HRS § 291E–61.5: the Senate Committee on Transportation, Military Affairs, and Government Operations explained that it "amended the provisions of the habitual drunk driver offense so that it is clearly a status offense." Sen. Stand. Comm. Rep. No. 1185, in 2003 Senate Journal, at 1523. The Senate Committee on the Judiciary and Hawaiian Affairs further noted that it found

> that being punished as a status offender rather than receiving an enhanced sentence has distinct implications. Status offenders receive a specific punishment as long as the offender meets the criteria at the time the offender reoffends. The offender cannot defeat the charge by having a previous conviction reversed on a subsequent appeal. By contrast, enhanced sentences can be avoided if any prior convictions that are the basis for an enhanced sentence are overturned.

> Your Committee believes it is important that the habitually impaired driver understand that he or she will be charged with a felony for any further impaired driving arrests, even if one of [the driver's] prior convictions is reversed after their arrest.

Sen. Stand. Comm. Rep. No. 1268, in 2003 Senate Journal, at 1564. In order to effectuate its intent, the legislature included the following language in HRS § 291E–61.5(b):

> For the purposes of this section:

> "*Convicted* three or more times ..." *means that, at the time of the behavior for which the person is charged under this section, the person had* three or more

times within ten years of the instant offense ... *[a] judgment ... that, at the time of the instant offense, had not been expunged by pardon, reversed or set aside.*

(Emphases added.) This language strongly resembles the amended language of HRS § 291E–61(c), *see supra* note 10 ("Any judgment on a verdict or a finding of guilty ... that at the time of the offense has not been expunged by pardon, reversed, or set aside shall be deemed a prior conviction under this section."). Both the plain language of and the legislative history surrounding the 2003 amendments, accordingly, reflect a clear legislative intent that HRS § 291E–61(b)(1) to (3) be treated as separate status offenses. We therefore hold that the 2003 amendments to HRS § 291E–61 transformed HRS § 291E–61(b)(1) to (3) into status offenses.

> 4. *The amendments to HRS § 291E–61 do not alter this court's conclusion in State v. Domingues that HRS § 291E–61(b)(1) to (4) describe intrinsic elements that the prosecution is required to plead and prove beyond a reasonable doubt.*

▮ Effective January 1, 2002, the legislature repealed an earlier DUI law, HRS § 291–4.4 (Supp.2000),[14] and enacted HRS § 291E–61 (Supp.2001), see *supra note 10*. *See* 2000 Haw. Sess. L. Act 189, §§ 21, 23, 32, and 41 at 405–06, 425–27, 432–33.[15]

In *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409, (2005), this court confronted the question whether HRS § 291E–61 (Supp. 2001) was a substantial reenactment of HRS § 291–4.4. In *Domingues*, the defendant had

---

§§ ]291E–61 or 707–702.5" to HRS § 291E–61.5(b)(1) to bring it into uniformity with HRS § 291E–61.5(b)(2) and (3) and further amended the section in respects immaterial to the present matter. *See* 2004 Haw. Sess. L. Act 90, §§ 13 and 17 at 362–64. Effective July 5, 2005, the legislature amended HRS § 291E–61.5 again, in respects immaterial to the present matter. *See* 2005 Haw. Sess. L. Act 194, §§ 2 and 5 at 609–10.

14. HRS § 291–4.4 provided in pertinent part:
(a) A person commits the offense of habitually driving under the influence of intoxicating liquor ... if, during a ten-year period[,] the person has been convicted three or more times for a driving under the influence offense; and
(1) The person operates or assumes actual physical control of the operation of any vehi-

cle while under the influence of an intoxicating liquor ...;
....
(c) Habitually driving under the influence of intoxicating liquor ... is a class C felony.....

15. While both the 2000 and the 2001 HRS Cumulative Supplements contain the language of HRS § 291E–61, the revisor of statutes evidently failed to include a notation that the statute did not become effective until January 1, 2002. *Compare* 2000 Haw. Sess. L. Act 189, §§ 23 and 41 at 425–27 and 433; 2001 Haw. Sess. L. Act 157, §§ 25 and 39 at 397–98, 404 *with* HRS 2000 Cumulative Supplement vol. 5 at 210–12; HRS 2001 Cumulative Supplement vol. 5 at 198–200.

been arrested in August 2001 for violating HRS § 291-4.4, in effect at the time, but was subsequently indicted in March 2002 under the same law, three months after its repeal. 106 Hawai'i at 482–83, 107 P.3d at 411–12. This court analyzed the structure and purpose of the two statutes and held that the legislature had substantially reenacted HRS § 291-4.4 as HRS § 291E–61. *Id.* at 482, 107 P.3d at 411. In reaching that holding, this court concluded that the language of HRS § 291E–61(b)(1) to (4), *see supra* note 10, "describes attendant circumstances that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes." *Id.* at 487, 107 P.3d at 416 (citing HRS § 702–205 (1993) (defining elements of an offense)). This court thereby concluded that, as attendant circumstances and, therefore, essential elements of the offense intrinsic to the commission of the crime charged, "such aggravating circumstances 'must be alleged in the [charging instrument] in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed, and they must be determined by the trier of fact.'" *Id.* at 487–88, 107 P.3d at 416–17 (quoting *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203). That was required, we concluded, because

> ["i]t is an impermissible dilution of the jury's role as factfinder to remove the responsibility for determining the existence of facts leading to the imposition of a particular punishment.... We hold that when a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determina-

tions be made by the trier of fact. The legislature may not dilute the historical province of the jury by relegating facts necessary to the imposition of a certain penalty for criminal behavior to the sentencing court. The jury is the body responsible for determination of intrinsic facts necessary for the imposition of punishment for an offense criminalized by the legislature. The analysis in Schroeder protects the jury's role by mandating that the determination of facts intrinsic to the offense be made by the trier of fact.["]

*Id.* at 488, 107 P.3d at 417 (quoting *State v. Tafoya*, 91 Hawai'i 261, 270, 273, 982 P.2d 890, 899, 902 (1999)) (emphases omitted).

The language of HRS § 291E–61(b)(1) to (3) remains unchanged by the 2003 amendments and, while the legislature, as noted *supra* in section III.C.3, excised the class C felony from HRS § 291E–61(b)(4), it inserted a new aggravating factor into § 291E–61(b)(4), imposing additional punishments beyond those provided for in HRS § 291E–61(b)(1) to (3), for any adult convicted of operating a vehicle while under the influence and with a passenger under the age of fifteen years in or on the vehicle, *see supra* note 10. The *Domingues* analysis, therefore, retains its vitality, inasmuch as considerations of due process continue to require that the aggravating factors set forth in HRS § 291E–61(b) [16] —all of which remain "attendant circumstances that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes," *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416—be alleged in the charging instrument and proven beyond a reasonable doubt at trial.

---

**16.** The holding in *Domingues* was based in part on the concern that due process required that the defendant be put on notice that, under HRS § 291E–61(b)(4), he or she was charged with a class C felony rather than the petty misdemeanors set forth in HRS § 291E–61(b)(1) to (3). *See* 106 Hawai'i at 487 & n. 8, 107 P.3d at 416 & n. 8 (noting that "[i]t is fundamental that, as a matter of basic due process, '[a] defendant must be put on sufficient notice of the 'nature and cause of the accusation' with which he is charged'" and observing that the inclusion of a class C felony alongside three petty misdemeanors generated the conundrum that a defendant would be insufficiently put on notice of the right

to a jury trial absent the requirement that the elements of HRS § 291E–61(b) be included in an indictment or complaint) (quoting *State v. Lemalu*, 72 Haw. 130, 134, 809 P.2d 442, 444 (1991) (quoting *State v. Jendrusch*, 58 Haw. 279, 281, 567 P.2d 1242, 1245 (1977))). In the amended version of HRS § 291E–61(b)(4), *see supra* note 10, due process would similarly require the prosecution to allege in the charging instrument and prove at trial that a passenger under the age of fifteen was in or on the defendant's vehicle at the time of the arrest. *See Tafoya*, 91 Hawai'i at 270, 273, 982 P.2d at 899, 902; *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203.

5. *The district court plainly erred in convicting Ruggiero as a second time DUI offender pursuant to HRS § 291E–61(a) and (b)(2).*

 This court's holding in *Tafoya* requires that the essential elements of any offense be alleged in the complaint and found beyond a reasonable doubt by the trier of fact. 91 Hawai'i at 270, 273, 982 P.2d at 899, 902; *see also Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203. Inasmuch as we conclude, *supra,* that a prior conviction, as described in HRS § 291E–61(b)(2) (Supp.2003), is an elemental attendant circumstance, intrinsic to the offense of operating a vehicle under the influence of an intoxicant, it was necessary that Ruggiero's prior conviction be alleged in the charging instrument and proven at trial as preconditions to his present conviction of operating a vehicle under the influence of an intoxicant for the second time within five years, in violation of HRS § 291E–61(a) and (b)(2).

 The complaint charging Ruggiero with a violation of HRS § 291E–61 was silent with respect to the attendant circumstance of any prior conviction, see *supra note* 3, and, therefore, was insufficient as a matter of law in charging a violation of HRS § 291E–61(a) and (b)(2), because

[i]t is well settled that an "accusation must sufficiently allege all of the essential elements of the offense charged," a requirement that "obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]" *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)[; accord ... *Israel,* 78 Hawai'i at] 69–70, 890 P.2d [at] 306–07 ...; ... *Elliott,* 77 Hawai'i [at] 311, 884 P.2d [at] 374.... Put differently, the sufficiency of the charging instrument is measured, *inter alia,* by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" *State v. Wells,* 78 Hawai'i 373, 379–80, 894 P.2d 70, 76–77 (1995) (citations and internal quotation marks omitted) (brackets in original). "A charge defective in this regard amounts to a failure to state an offense, and a conviction based

upon it cannot be sustained, for that would constitute a denial of due process." *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 (citations omitted).

*Cummings,* 101 Hawai'i at 142, 63 P.3d at 1112 (some bracketed material added and some in original) (quoting *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996)).

For

[j]ust as the [S]tate must prove beyond a reasonable doubt all of the essential elements of the offense charged, the State is also required to sufficiently allege them and that requirement is not satisfied by the fact that the accused actually knew them and was not misled by the failure to sufficiently allege all of them.

*Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (brackets in original) (quoting *State v. Tuua,* 3 Haw.App. 287, 293, 649 P.2d 1180, 1184–85 (1982)).

 In *State v. Motta,* 66 Haw. 89, 657 P.2d 1019 (1983), we adopted a "standard for post-conviction challenges to indictments [that] means we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." *Id.* at 92, 657 P.2d at 1020. But Ruggiero does not "challenge" the sufficiency of the complaint against him on appeal; rather he challenges only his sentence as a second-time offender. Therefore, any review of the sufficiency of the complaint under the *Motta* standard has to be undertaken on the basis of plain error.

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted)[; *s]ee also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) ... ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Staley,* 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (quoting *[State v.] Maumalanga,* 90 Hawai'i [58,] 63, 976 P.2d [372,] 377 [ (1998) ], (quoting *[State v.] Da-*

*via*, 87 Hawai'i [249,] 253, 953 P.2d [1347,] 1351[ (1998) ] )).

*Jenkins*, 93 Hawai'i at 101, 997 P.2d at 27.

Ruggiero does not claim that the complaint "prejudiced" him; rather, he filed his appeal solely to reduce his sentence to that of a first-time offender. While the complaint—by omitting any mention of a prior DUI conviction—substantially prejudiced him with regard to defending against a DUI charge as a second-time offender, *cf. State v. Kekuewa,* 112 Hawai'i 269, 145 P.3d 812 (App.2006),[17] Ruggiero *concedes* that he is subject to sentencing under HRS § 291E–61(b)(1) as a first-time offender.

Moreover, on its face, the complaint can reasonably be construed to charge the crime of DUI as a first offense, in violation of HRS § 291E–61(a) and (b)(1). It plainly states the elements set forth in HRS § 291E–61(a) ("operates or assumes actual physical control of a vehicle") and –61(a)(1) ("[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and

guard against casualty"). *See supra* note 3. While the complaint is silent as to the lack of prior DUI convictions, given the unique nature of the element—the presence of an empty set, that is, the absence of any prior convictions[18]—silence with respect to prior violations can only betoken that their absence, *i.e.*, the import of HRS § 291E–61(b)(1), is implicit in the charge.[19] Ruggiero himself impliedly acknowledges that the complaint was sufficient to charge DUI as a first-time offense when he concedes that he is subject to sentencing as a first time offender under HRS § 291E–61(b)(1). And while, in light of Ruggiero's January 29, 2003 DUI conviction, it was within the discretion of the prosecution to pursue a sufficiently articulated charge of DUI as a second-time *status* offender, it would also have fallen within the prosecution's discretion to charge the lesser included offense of DUI as a first-time offender. *See State v. Holbron,* 80 Hawai'i 27, 44, 904 P.2d 912, 929 (1995) ("Within constitutional limits, it is *always* the prosecution's prerogative to undercharge any offense for whatever reason it deems appropriate . . . ."

**17.** In *Kekuewa*, the defendant, convicted of DUI under the same statute at issue in the present matter, HRS § 291E–61 (Supp.2003), had several prior DUI convictions. 112 Hawai'i at 277, 145 P.3d at 820. On appeal, he contended that the oral accusation was insufficient because, while it stated the present charge was his second offense, it omitted to specify whether the prosecution was relying on a prior offense within the preceding five years, as required by the plain language of HRS § 291E–61(b)(2), *see supra* note 10. *Id.* at 270–71, 145 P.3d at 813–14. The Intermediate Court of Appeals concluded that, in light of his multiple prior convictions, the defendant's due process right to notice of the elements of the charge against him was violated by the prosecution's failure specifically to allege a prior conviction that had occurred within the previous five years. *Id.* By contrast, Ruggiero evinces no prejudice from a complaint that on its face makes it clear that prior convictions will not be relied upon in seeking a conviction or sentencing terms.

**18.** Indeed, we are hard pressed to imagine another instance where, in the charging instrument, silence as to a material element leaves no doubt as to the nature of the offense charged, rendering the element set forth in HRS § 291E–61(b)(1) possibly *sui generis*.

**19.** We emphasize, contrary to Justice Nakayama's suggestion, concurring and dissenting opin-

ion at 242, 160 P.3d at 718, that, because the attendant circumstance of no prior convictions within the five preceding years, as set forth in HRS § 291E–61(b)(1), is elemental, it *should* be alleged in the charge and proved at trial. We also disagree with Justice Nakayama's assertion, *see id.* at 242, 160 P.3d at 718, that the prosecution's burden of proof on the issue at trial results in an absurdity; as a practical matter, any attempt by the defendant to establish, as a "defense," that he or she did, in fact, have prior convictions would be self-defeating insofar as a violation of HRS § 291E–61(a) with no priors is a lesser included offense of the same violation with priors and, therefore, any such assertion would be a *de facto* admission of guilt of the lesser included offense. *See State v. Burdett,* 70 Haw. 85, 88, 762 P.2d 164, 166 (1988) ("[A] lesser . . . offense is necessarily included in a charge of the greater if the proof necessary to establish the greater offense will of necessity establish the lesser offense.") (internal quotation marks omitted); *State v. Feliciano,* 62 Haw. 637, 639, 618 P.2d 306, 308 (1980) (citing *Olais–Castro v. United States*, 416 F.2d 1155, 1157 (9th Cir.1969)) ("Simply put, an offense is included if it is impossible to commit the greater offense without also committing the lesser."); HRS § 701–109(4)(c) (1993) (a lesser included offense "differs from the [greater] offense . . . only in the respect that a less serious injury . . . to the same . . . public interest . . . suffices to establish its commission.").

(Emphasis in original.)); *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) (holding that the prosecution has "the discretion to decide which statutory subsection to charge the accused with"); *Territory v. Ouye,* 37 Haw. 176, 181 (1945) (noting that the prosecution had the discretion to select which charge upon which it wished to proceed).

Inasmuch as Ruggiero suffered no substantial prejudice from the complaint in defending against a DUI charge as a first-time offender, and the circuit court made the appropriate findings and conclusions to convict Ruggiero of DUI as a first-time offender, we remand the case to the district court for the entry of judgment of conviction of that offense. *See Elliott,* 77 Hawai'i at 313, 884 P.2d at 376.

## IV. *CONCLUSION*

Insofar as (1) the complaint was insufficient to support a conviction of, and sentence for, operating a vehicle under the influence of an intoxicant as a second offense within five years and (2) the district court therefore plainly erred in entering its judgment of conviction and sentence on that count, we vacate the district court's September 30, 2004 judgment and sentence as it pertains to the violation of HRS § 291E–61. However, insofar as the complaint was sufficient to support a conviction and sentence as a first-time violator of HRS § 291E–61(a) and (b)(1), we remand this matter to the district court for the entry of a judgment of conviction for operating a vehicle under the influence of an intoxicant with no prior offenses, in violation of HRS § 291E–61(a) and (b)(1), and for resentencing in accordance therewith. We affirm the district court's judgment in all other respects.[20]

20. Inasmuch as our disposition of the matter does not rely on Ruggiero's January 29, 2003 conviction vacated by this court, we need not reach Ruggiero's double jeopardy arguments pertaining to that conviction.

1. I agree with the approach, insofar as no compelling justification has been presented to justify overruling *Domingues. See State v. Garcia,* 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001)

Concurring and Dissenting Opinion by NAKAYAMA, J., with whom MOON, C.J., joins.

While I agree with the analysis that, consistent with this court's previous approach in *State v. Domingues,* 106 Hawai'i 480, 107 P.3d 409 (2005), HRS §§ 291E–61(a) and (b)(2)-(3) (Supp.2004) must be construed as delineating separate status offenses,[1] I respectfully disagree with the majority's conclusion that HRS § 291E–61(b)(1) also describes attendant circumstances (*i.e.,* essential elements). *See* majority opinion, at 238, 160 P.3d at 714.

In my view, HRS § 291E–61(a) contains the essential elements of the default offense of Operating a Vehicle Under the Influence of an Intoxicant ("OVUII"), and HRS § 291E–61(b)(1) is its attendant sentencing provision. I agree that, per the doctrine of constitutional doubt, *see* majority opinion, at 234–35, 160 P.3d at 710–12, and consistent with what the legislature appears to have intended, *see* majority opinion, at 236–37, 160 P.3d at 712–13, HRS § 291E–61(b)(2)–(3) must be interpreted as consisting of additional attendant circumstances differentiating separate status offenses. Thus, conceptually, HRS § 291E–61 (Supp.2004) continues to consist of a hierarchy of separate status offenses, *see Domingues,* 106 Hawai'i at 487, 107 P.3d at 416 ("In other words, the ... language of HRS § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances, ... that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes."), but described as follows: (1) HRS § 291E–61(a) sets forth the default OVUII offense; (2) HRS §§ 291E–61(a) and (b)(2) describe the second level OVUII offense designed to punish those persons who commit an OVUII offense "within five years of a prior conviction for an offense under this section or

("While there is no necessity or sound legal reason to perpetrate an error under the doctrine of stare decisis, ... we agree with the proposition expressed by the United States Supreme Court that a court should not depart from the doctrine of stare decisis without *some compelling justification.*") (Internal quotation marks omitted.) (Internal citation omitted.) (Brackets omitted.) (Emphasis in original.).

section 291E–4(a) ....”; and (3) HRS §§ 291E–61(a) and (b)(3) describe the third level OVUII offense designed to punish those persons who commit an OVUII offense “within five years of two prior convictions for offenses under this section or section 291E–4(a)....”

I recognize that the foregoing interpretation begs the question why, in applying the *Domingues* approach, HRS § 291E–61(b)(1) is not again deemed to be an attendant circumstance. To that end, I believe that common sense dictates this natural progression from *Domingues*.[2] The inescapable consequence of the majority's position—that HRS § 291E–61(b)(1) describes attendant circumstances—is that the prosecution must prove, beyond a reasonable doubt, the defendant's status as a first-time offender. *See* HRS § 701–114 (1993) (stating that a conviction must be based upon proof beyond a reasonable doubt of “[e]ach element of the offense[ ]”). With all due respect, I believe that this result is “absurd.” *See* HRS § 1–15(3) (“Every construction which leads to an absurdity shall be rejected.”). Moreover, the phrase “[f]or the first offense” contributes nothing to the definition of the OVUII offense set forth in HRS § 291E–61(a). The lack of definitional value further indicates that HRS § 291E–61(b)(1) does not describe essential elements of the offense. *See* HRS § 702–205 (1993) (“The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as ... [a]re *specified by the definition of the offense* ....”) (Emphasis added.). Finally, there is no practical reason why a defendant must be informed that the offense for which he or she is charged with is his or her first offense. Indeed, a defendant is uniquely aware of his or her status as a first-time offender and will not ever contest his or her classification as such. In short, such information is neither essential, nor elemental.

In order to avoid that conclusion, the majority has carved a narrow exception maintaining that HRS § 291E–61(b)(1) describes attendant circumstances, but declaring its

terms a nullity. *See* majority opinion, at 240, 160 P.3d at 716. I must respectfully disagree with this unprecedented deviation from the unequivocal rule announced in *State v. Cummings*, 101 Hawai'i 139, 63 P.3d 1109 (2003), requiring that the prosecution allege all of the essential elements of the offense charged. *Id.* at 142, 63 P.3d at 1112. As mentioned, the absence of definitional value logically suggests that HRS § 291E–61(b)(1) is not an essential element, not that it is an essential element with no practical value. *See* discussion *supra*.

Nevertheless, I agree with the majority's ultimate decision to vacate Ruggiero's conviction and sentence under HRS §§ 291E–61(a) and (b)(2), and remand for entry of judgment and for resentencing in accordance with HRS §§ 291E–61(a) and (b)(1). *See* majority opinion, at 241, 160 P.3d at 717. I therefore concur in the result, but for the aforementioned reasons.

Concurring and Dissenting Opinion by ACOBA, J.

This case is the third in a trilogy of cases, beginning with *State v. Domingues*, 106 Hawai'i 480, 107 P.3d 409 (2005), followed by *State v. Kekuewa*, 112 Hawai'i 269, 145 P.3d 812 (App.), *cert. granted*, 113 Hawai'i 153, 149 P.3d 805 (2006), all having their origins in the split opinions in *State v. Shimabukuro*, 100 Hawai'i 324, 60 P.3d 274 (2002) (plurality opinion). A review of these cases is necessary for an understanding of the historical development of the case law in this area and the ultimate result in the instant case.

For while the plurality relies on *Domingues*, the parties do not argue its applicability. However, inasmuch as this court may recognize plain error, *State v. Nichols*, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006); Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (2007), I agree that based on *Domingues*, the charge against Defendant–Appellant Adam Ruggiero (Ruggiero) was insufficient to support the conviction and sen-

---

2. I note that *Domingues* interpreted the version of HRS § 291E–61 in effect in 2002. Inasmuch as HRS § 291E–61 was substantially amended in 2003, *see* 2003 Haw. Sess. L. Act 71, § 1, at 123–

24, *Domingues* does not necessarily inform our interpretation of the version of HRS § 291E–61 in effect in 2004.

tence for Operating a Vehicle Under the Influence of an Intoxicant (OVUII), Hawai'i Revised Statutes (HRS) § 291E–61 (Supp. 2003), as a second time offender, HRS § 291E–61(b)(2). However, consistent with the result of the Intermediate Court of Appeals (ICA) in *Kekuewa*, 112 Hawai'i at 277, 145 P.3d at 820, in which this court granted certiorari,[1] I would hold that, as in *Kekuewa*, which follows from *Domingues*, Ruggiero cannot be held liable for any OVUII offense, contrary to the plurality's ultimate holding.

## I.

In *Shimabukuro*, it was held that "[i]n a conviction for habitually driving under the influence of intoxicating liquor or drugs (Habitual DUI), [HRS] § 291–4.4 (Supp.1998), [2] the requisite prior driving under the influence (DUI) convictions must be valid." 100 Hawai'i at 325, 60 P.3d at 275 (Acoba, J., announcing the judgment of the court). The defendant in *Shimabukuro* was charged on June 6, 1999 with Habitual DUI. *Id.* Approximately six months later, "[o]n January 3, 2000, one of [the d]efendant's three prior DUI convictions was vacated because it was 'unconstitutionally obtained.' " *Id.* Thereafter, but apparently prior to trial, on January 18, 2000, the defendant "filed a motion to dismiss his Habitual DUI charge, on the ground that he had less than the number of convictions necessary for charging that offense." *Id.* at 275, 278 n. 12, 60 P.3d at 325, 328 n. 12. However, the district court denied the defendant's motion, relying on *State v. Lobendahn*, 71 Haw. 111, 784 P.2d 872 (1989).[3] *Shimabukuro*, 100 Hawai'i at 325,

---

1. Although this court has not issued a disposition in connection with the grant of certiorari in *Kekuewa*, *Kekuewa* should have been disposed of before the instant case. The *Kekuewa* certiorari application was granted previously on December 14, 2006, and oral argument was held on March 21, 2007. The certiorari application in *Kekuewa* requests that *Domingues*, which is the controlling authority in this case, be reversed and, thus, confirmation of *Domingues* should precede its citation for the result in this case. Inasmuch as the majority insists that this case be issued before disposition of the *Kekuewa* certiorari application, under the circumstances, some of the references to *Kekuewa* herein are to the briefs filed by the parties on the certiorari application.

2. In *Shimabukuro* it was stated that:

 HRS § 291–4.4 prohibit[ed] any person from habitually driving under the influence of liquor or drugs. In relevant part, that section provided:

 **Habitually driving under the influence of intoxicating liquor or drugs.** (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, during a ten-year period the person has been *convicted three or more times* for a driving under the influence offense; and

 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty;

 (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters

 of blood or .08 or more grams of alcohol per two hundred ten liters of breath[.]

 (Emphasis added.) HRS § 291–4.4 was repealed on January 1, 2002. It [was] replaced by HRS § 291E–61 (Supp.2001).

 *Shimabukuro*, 100 Hawai'i at 325 n. 1, 60 P.3d at 275 n. 1 (Acoba, J., announcing the judgment of the court).

3. In *Shimabukuro*, it was explained,

 In *Lobendahn*, the defendant was convicted of kidnapping and terroristic threatening. *See Lobendahn*, 71 Haw. at 111, 784 P.2d at 872. He appealed those convictions. While the appeal was pending and the defendant was on parole, he was arrested and charged with being a felon in possession of a firearm and ammunition in violation of HRS § 134–7 (1985). *See id.* at 112, 784 P.2d at 872. After the defendant's arrest, but before his trial for the felon-in-possession charge, this court set aside his kidnapping and terroristic threatening convictions and remanded his case for a new trial. *See id.* Upon retrial, the defendant was acquitted of the kidnapping and terroristic threatening charges. *See id.* Subsequently, the defendant was convicted of being a felon in possession of a firearm and ammunition under HRS § 134–7. *See id.*

 On appeal, this court affirmed the defendant's HRS § 134–7 conviction on the ground that "the legislature did not intend to encourage persons to flaunt the law while an appeal is pending." *Id.* at 112–13, 784 P.2d at 873. The *Lobendahn* court held that "[defendant]'s status was that of a convicted felon at the time he possessed the firearm and ammunition. Such possession was unlawful and the subsequent reversal of the conviction does not then render such possession lawful." *Id.* (citing *United States v. Liles*, 432 F.2d 18, 21 (9th Cir.1970)).

60 P.3d at 275. The defendant "entered into a conditional plea of guilty allowing him to challenge the court's denial of his motion to dismiss." *Id.* at 325–26, 60 P.3d at 275–76.

On appeal, the rule of lenity was applied and "the term 'convicted' in HRS § 291–4.4 as referring to a *prior valid* DUI conviction" was "strictly construe[d.]" *Id.* at 327, 60 P.3d at 277 (Acoba, J., announcing the judgment of the court) (emphasis added). It was noted that "[a]ccording to the legislative history of HRS § 291–4.4, the requisite prior DUI convictions were considered an *element* of the offense." *Id.* at 328 n. 12, 60 P.3d at 278 n. 12 (Acoba, J., announcing the judgment of the court) (citing House. Stand. Comm. Rep. No. 844, in 1995 House Journal, at 1345) (emphasis added). Hence, HRS § 291–4.4 was not intended to "be viewed as a sentencing enhancement statute." *Id.* (Acoba, J., announcing the judgment of the court). As set forth in *Shimabukuro,*

> *According to the legislative history of HRS § 291–4.4, the requisite prior DUI convictions were considered an element of the offense.* See House Stand. Comm. Rep. No. 844, in 1995 House Journal, at 1345 ("*This bill already includes as an element of habitually driving under the influence, three convictions for DUI.*" (Emphasis added.)). The purpose of HRS § 291–4.4 was to "establish a felony offense for those who are convicted of habitually driving under the influence of intoxicating liquors or drugs." *Id.*
>
> The House Judiciary Committee also considered, but did not adopt, the Office of the Public Defender's position that "the philosophy established in the Penal Code to address the repeat offender is by way of *enhanced penalties,* rather than an elevation of the classification of the offense." *Id.* (emphasis added). Hence, the legislature did not intend that HRS § 291–4.4 be viewed as a sentencing enhancement statute.

*Id.* (Acoba, J., announcing the judgment of the court) (some emphases in original and emphasis added). Thus it was concluded that the trial court "erred in denying [the d]efendant's motion to dismiss" the habitual

100 Hawai'i at 325 n. 5, 60 P.3d at 275 n. 5

DUI charge. *Id.* at 328, 60 P.3d at 278 (Acoba, J., announcing the judgment of the court).

## II.

On January 1, 2002, HRS § 291–4.4 was repealed. *Id.* at 328 n. 12, 60 P.3d at 278 n. 12. In that regard, *Shimabukuro* recognized that in enacting HRS § 291E–61, the legislature had adopted a sentence-enhancing statute. *Id.* (Acoba, J., announcing the judgment of the court). It was pointed out in *Shimabukuro,* that based on the legislative history, the newly enacted HRS § 291E–61 (Supp. 2001), consolidated "all driving under the influence provisions into *one offense and sentencing scheme[.]*" *Id.* (Acoba, J., announcing the judgment of the court) (emphasis added).

> More specifically, the provisions [of H.B. No. 1881] consolidate impaired driving and boating offenses, under present sections 291–4 (alcohol), 291–7 (drugs), and 200–81 (boating), *into one single offense (operating a vehicle under the influence of an intoxicant), with uniform penalties. This offense also includes the present class C felony habitual DUI (section 291–4.4).*
>
> Your Committee finds that consolidation of the habitual offense will *ensure that all DUI convictions, whether under section 291–4 or 291–4.4, count as priors for purposes of sentencing.*

Senate Stand. Comm. Rep. No. 1881, in 2000 House Journal, at 1400 (emphases added).

> Hence, as set forth in HRS § 291E–61, the habitual DUI *provision has become part of a sentencing scheme expressly "address[ing] the repeat offender ... by way of enhanced penalties"* as the public defender had recommended in 1995. House. Stand. Comm. Rep. No. 844, in 1995 House Journal, at 1345. According to the legislative history of HRS § 291–4.4, that was not the case prior to the effective date of HRS § 291E–61.

*Id.* (Acoba, J., announcing the judgment of the court) (some emphases in original and emphasis added).

(brackets in original).

### III.

With respect to a sentencing enhancement statute, in *State v. Sinagoga,* 81 Hawai'i 421, 435, 918 P.2d 228, 242 (App.1996) (Acoba, J., announcing the opinion of the court except for part IV.B.4. written by Burns, C.J., with Acoba, J., dissenting), the ICA had previously held that "if a sentencing court gives consideration to the defendant's previous convictions in choosing to impose consecutive, rather than concurrent, terms of imprisonment, the court must ensure that any prior felony, misdemeanor, and petty misdemeanor conviction relied on was a counseled one." (Citing *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).). As to the procedure to be implemented in determining whether a prior conviction was counseled or not, a majority of the ICA held in Part IV.B.4. of that opinion, that the defendant was required to challenge a conviction relied on by the State as an uncounseled one:

> As we have noted above, the rationale for not allowing the consideration of an uncounseled criminal conviction as a basis for the imposition or enhancement of a prison sentence is its lack of reliability. In our view, if the presentence report states that the defendant has a prior criminal conviction and the defendant does not respond to that report with a good faith challenge on the record that the reported criminal conviction was (1) uncounseled, (2) *otherwise invalidly entered,* or (3) not against the defendant, that prior criminal conviction is reliable for all sentencing purposes. We agree with [*State v.*] *Triptow*[, 770 P.2d 146 (Utah 1989),] that the defendant, more than anyone else, knows whether or not his or her prior criminal convic-

tion was uncounseled, otherwise invalid, or irrelevant.

*Id.* at 445, 918 P.2d at 252 (Burns, C.J., announcing the opinion of the court with respect to Part IV.B.4.) (emphasis added). On the other hand, the dissent argued that inasmuch as the State proffered the convictions for the purpose of enhancing the severity of a prison sentence, the burden of establishing their validity should rest with the State:

> The majority's faulty premise that "the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was uncounseled, otherwise invalid, or irrelevant" has no support in the record. Majority opinion at 445, 918 P.2d at 252. Time and time again, the cases indicate that lay persons are typically unaware of the nature and import of court procedures....
>
> ... Under the presumptive approach adopted by the majority, a defendant's failure to raise an uncounseled conviction constitutes, in effect, a *waiver* of his state constitutional right to effective assistance of counsel, without provision for the required procedures for the knowing, voluntary and intelligent waiver of the right to counsel *and permits the State to use such a conviction, even if uncounseled, in the sentencing process.*

*Id.* at 437, 918 P.2d at 244 (Acoba, J., dissenting) (some emphasis in original and some added).[4]

### IV.

Subsequently, the application of *Sinagoga,* with respect to prior convictions, was seemingly limited to convictions that were uncounseled. In *State v. Veikoso,* 102 Hawai'i 219, 220, 74 P.3d 575, 576 (2003), the defendant

---

4. *See* Shirley M. Cheung, *State v. Sinagoga: The Collateral Use of Uncounseled Misdemeanor Convictions in Hawai'i,* 19 U. Haw. L.Rev. 813, 843 (1997) (The fairness of the majority's rule on the procedural aspect of *Sinagoga* can be questioned and that "[t]he better rule would be to follow Judge Acoba's dissenting opinion in Sinagoga" because placing the burden "on the defendant may require him to determine whether each and every one of his convictions was counseled or not, including those convictions that may never be considered in a sentencing hearing" and "[the

State] has greater and easier access to the defendant's prior criminal records, particularly when the convictions occur[ed] in other jurisdictions. [Therefore p]lacing the burden on the State makes logical sense[,]" because "[t]he State knows which prior convictions it will rely on in requesting enhanced sentencing and can more efficiently research whether the convictions were counseled or not. The State would have to conduct this research anyway, no matter where the burden is placed, so placing the burden on the State will avoid the public paying twice.").

was charged with habitually driving under the influence of intoxicating liquor, in violation of HRS § 291–4.4 (Supp.2000) (Habitual DUI). The defendant filed a motion to dismiss "to collaterally attack the validity of three of his underlying DUI convictions and preclude the prosecution from using them to prove the habitual DUI charge." *Id.* at 220–21, 74 P.3d at 576–77. The trial court "denied the motion to dismiss after determining that the continued validity of the predicate prior convictions was irrelevant to establish culpability for the habitual DUI charge." *Id.* at 221, 74 P.3d at 577. Thereafter, the defendant "entered a conditional guilty plea, preserving his right to appeal the trial court's denial of his motion to dismiss." *Id.*

On appeal, the *Veikoso* court "examine[d] whether a defendant has the right to collaterally attack prior convictions in the context of trial proceedings for a subsequent offense." *Id.* at 223, 74 P.3d at 579. Taking issue with the reference to prior convictions that were "otherwise invalidly entered" in the procedural portion of *Sinagoga*, 81 Hawai'i at 437–47, 918 P.2d at 244–54 (Burns, C.J., announcing the opinion of the court with respect to Part IV.B.4.), this court limited the application of *Sinagoga*, with respect to prior convictions, to uncounseled convictions:

> We recognize the tension between our holding and dictum in *Sinagoga*. In *Sinagoga*, the [ICA] was required to resolve the issue of whether a sentencing court could consider a defendant's prior *uncounseled* convictions in determining whether consecutive terms of imprisonment were warranted. *Sinagoga*, 81 Hawai'i at 435, 918 P.2d at 242. The ICA [majority on the procedural aspect] expressly held that the sentencing court could properly rely only upon prior *counseled* convictions, *id.*, but proceeded to outline a procedure whereby defendants could challenge convictions appearing in a presentence report on the basis that they were "(1) uncounseled, (2) *otherwise invalidly entered*, and/or (3) not against the defendant[.]" *Id.* at 446, 918 P.2d at 253 (emphasis added). *Because the "otherwise invalidly entered" language in Sinagoga may be construed as permitting collateral attacks whenever the validity of a conviction is challenged, we empha-*

*size, in light of our holding today, that this language should be disregarded.*

*Veikoso*, 102 Hawai'i at 226 n. 8, 74 P.3d at 582 n. 8 (some emphases in original and some added). However, *Veikoso* confirmed that a defendant could file a HRPP Rule 40 proceeding for post-conviction relief regarding the constitutional validity of prior convictions:

> Challenges to the constitutional validity of prior convictions alleged to have been obtained as the result of invalid guilty pleas must be raised either through a direct attack or pursuant to HRPP Rule 40, which encompasses all common law and statutory procedures for post-conviction relief, and not in proceedings related to a subsequent habitual DUI offense.

*Id.* at 226, 74 P.3d at 582; *see also id.* at 227, 74 P.3d at 583 (Acoba, J., concurring) (explaining that "a collateral attack on a prior conviction should not be allowed in the trial proceedings in which the prior conviction is an element to be proven" (citing *but see, e.g., People v. Allen,* 21 Cal.4th 424, 87 Cal. Rptr.2d 682, 981 P.2d 525, 535–38 (Cal.1999) (holding that since the California Supreme Court has required a colloquy as to a defendant's constitutional rights, the "record [from the prior proceeding] should clearly demonstrate the defendant was told of his rights and that he affirmatively waived them[,]" and because of this ease of administration, "motions to strike prior felony convictions" in a subsequent trial are permitted))); *State v. Grindling,* 96 Hawai'i 402, 405, 31 P.3d 915, 918 (2001) ("As a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction.").

## V.

### A.

In *Domingues*, the first case of the trilogy, the defendant was tried under "HRS § 291–4.4(a)(1) and/or 291–4.4(a)(2) [ (Supp.2000) ]." 106 Hawai'i at 483, 107 P.3d at 412. The oral charge stated in relevant part,

> Kyle Evan Domingues did operate or assume actual physical control of the opera-

tion of any vehicle *while under the influence of intoxicating liquor ... and had been convicted three or more times for driving under the influence offenses during a ten-year period, and/or did operate* or assume actual physical control of the operation of any vehicle while with .08 or more grams of alcohol per one hundred milliliters, ... and had *been convicted three or more times for driving under the influence offenses during a ten year period,* thereby committing the *offense of Habitually Driving Under the Influence of Intoxicating Liquor or Drugs, in violation of Sections 291–4.4(a)(1) and/or 291–4.4(a)(2) of the [HRS].*

*Id.* (emphases in original) (capitalization omitted). In that connection, HRS § 291–4.4 stated in pertinent part:

**Habitually driving under the influence of intoxicating liquor of drugs.** (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, *during a ten-year period the person has been convicted three or more times* for a driving under the influence offense; and

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person is under the influence of intoxicating liquor in an amount sufficient *to impair the person's* normal mental faculties or ability to care for oneself and guard against casualty;

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath[.]

....

(c) *Habitually driving under the influence of intoxicating liquor or drugs is a class C felony.* ...

(Emphases added.)

Thereafter, "Domingues filed a motion to dismiss the indictment in open court" on the basis that "because HRS §§ 291–4.4(a)(1) and (a)(2) had been repealed prior to the indictment date, Domingues should not be charged thereunder." *Domingues,* 106 Hawai'i at 483, 107 P.3d at 412. The new statute, HRS § 291E–61(a) and (b)(4) (Supp. 2001), under which Domingues was not charged but that was in·effect at the time Domingues was charged, provided in pertinent part as follows:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol....

....

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced* as follows without possibility of probation or suspension of sentence:

....

(4) *For an offense that occurs within ten years of three or more prior convictions* for offenses under this section, section 707–702.5, or section 291E–4(a):

....

*An offense under this paragraph is a class C felony.*

(Emphases added.) As the dissent in *Domingues* indicated, the new statute, "HRS § 291E–61[,] convert[ed] what had been an *element* of the offense under HRS § 291–4.4, *i.e.,* that the accused had been convicted three or more times ...[,] into a *sentencing* factor[.]" *Domingues,* 106 Hawai'i at 496, 107 P.3d at 425 (Acoba, J., dissenting, joined by Nakayama, J.) (emphases added). *See also Shimabukuro,* 100 Hawai'i at 328 n. 12, 60 P.3d at 278 n. 12 (Acoba, J., announcing the judgment of the court) (stating that "the habitual DUI provision ha[d] become a part of a sentencing scheme expressly 'addressing the repeat offender ... by way of enhanced penalties' " (ellipses points in original) (citation omitted)). Thus the new statute, HRS § 291E–61, was not a substantial reenactment of HRS § 291–4.4. The majority response to this in *Domingues* was to judicially convert the express "sentencing" factors into elements.

The majority proceeded to hold that the "sentencing" provisions in the new statute, 291E–61(b)(1)–(3),[5] pertaining to petty misdemeanor offenses of varying sanctions, must be considered with HRS 291E–61(b)(4), the Class C felony offense, as establishing a "hierarchy of offenses." *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. As such, according to the majority, references to the number of convictions must be treated as "attendant circumstances," *id.* (citing HRS § 702–205 (1993)), and, thus, as elements of the offenses. The majority accomplished this by "judicially imprint[ing] on HRS § 291E–61" constitutional due process requirements. *Id.* at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.). This, in effect, nullified the express statutory language and the legislative history

that "[made] the three prior conviction condition a sentencing factor." *Id.* (Acoba, J., dissenting, joined by Nakayama, J.); *see also Shimabukuro*, 100 Hawai'i at 328 n. 12, 60 P.3d at 278 n. 12 (Acoba, J., announcing the judgment of the court).

**B.**

As the Petitioner/Plaintiff–Appellee State of Hawai'i (the petitioner) correctly stated in its supplemental brief in *Kekuewa*, "[t]he ultimate issue in *Domingues* was whether HRS § 291E–61(b)(4) (Supp.200[1]) (since repealed) was a 'substantial reenactment' of HRS § 291–4.4 (Supp.200[0])." As noted above, to support its conclusion that HRS § 291E–61(b)(1)–(4) was a "substantial reenactment" of HRS § 291–4[6] and 291–4.4, the

5. HRS § 291E–61(b)(1)–(3) concerned petty misdemeanors as follows:

 (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without the possibility of probation or suspension of sentence:
 (1) For the first offense or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):
 (A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court; and
 (B) Ninety-day prompt suspension of license and privilege to operate a vehicle ... and
 (C) Any one or more of the following:
 . . . .
 (ii) *Not less than forty-eight hours and not more than five days imprisonment;* or
 (iii) A fine of not less than $150 but not more than $1,000.
 . . . .
 (2) For an offense that occurs within five years of a prior conviction[:]
 . . . .
 (B) Either one of the following:
 . . . .
 (ii) *Not less than five days but not more than fourteen days of imprisonment;* and
 (C) A fine of not less than $500 but not more than $1,500;
 . . . .
 (3) For an offense that occurs within five years of two prior convictions for offenses under this section or section 291E–4(a):
 (A) A fine of not less than $500 but not more than $2,500;
 (B) Revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years; and

 (C) *Not less than ten days but not more than thirty days imprisonment* of which at least forty-eight hours shall be served consecutively.
 (Emphases added.)

6. HRS § 291–4 (Supp.2000), entitled "Driving under the influence of an intoxicating liquor," stated in pertinent part:

 (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
 (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.
 (b) A person committing the offense of driving under the influence of intoxicating liquor shall be sentenced as follows without possibility of probation or suspension of sentence:
 (1) For the first offense, or any offense not preceded within a five-year period by a conviction for driving under the influence of intoxicating liquor under this section or section 291–4.4 by:
 . . . .
 (C) Any one or more of the following:
 . . . .
 (ii) Not less than forty-eight hours and not more than five days of imprisonment; or
 . . . .
 (2) For an offense that occurs within five years of a prior conviction for driving under

majority restyled the new sentencing provisions in HRS § 291E–61(b)(1)–(4) into elements in order to transform them into their prior elemental status in HRS §§ 291–4 and 291–4.4, the repealed statutes. The petitioner astutely observed that "[t]he *Domingues* court [ (referring to the majority) ] implicitly concluded that, in order to be a 'substantial reenactment,' a subsequent statute must contain the same elements as the repealed statute[, HRS § 291–4.4]." (Citing *Domingues,* 106 Hawai'i at 485–86, 107 P.3d at 414–15.).

In deciding that the sentencing factors in HRS § 291E–61(b)(1)–(4) must be treated as elements to preserve the constitutionality of the new statute, in spite of its express language, "the [majority] ... establish[ed] that the new statute, HRS § 291E–61[,] must be judicially impressed with due process requirements ... substantiating, indeed, that the new statute [was] *not* a substantial *reenactment* of the repealed one." *Domingues,* 106 Hawai'i at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.) (emphases in original). Thus, "the majority ... decide[d] whether an indictment brought pursuant to the *new* statute, HRS § 291E–61, under which [the d]efendant ha[d] *not* been charged, can be saved in the face of a due process challenge that [the d]efendant ha[d] *not* brought." *Id.* (emphases added).

But contrary to the *Domingues* majority's position, the language of the oral charge and of HRS § 291–4.4, plainly established that there was no question that Domingues was, "as a matter of basic due process, ... put on sufficient notice of the nature and cause of the accusation with which he [was] charged." *Id.* at 487, 107 P.3d at 416 (internal quotation marks and citations omitted). *See supra.* As the dissent related, "[n]o due process violation occurred here because [the d]efendant was [separately] charged with Habitual DUI under HRS § 291–4.4. Under that statute, three prior convictions was an element of the offense of Habitual DUI, which required the prosecution to allege and prove the prior convictions." *Id.* at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama,

the influence of intoxicating liquor under this section or section 291–4.4 by:
....
(B) Either one of the following:
....
(ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively; and
....
(3) For an offense that occurs within five years of two prior convictions for driving under the influence of intoxicating liquor under this section or section 291–4.4 by:
....
(C) Not less than ten days but not more than thirty days of imprisonment of which at least forty-eight hours shall be served consecutively.
(4) Any person eighteen years of age or older, who is convicted under this section and who operated or assumed actual physical control of a vehicle with a passenger, in or on the vehicle, who was younger than fifteen years of age, shall be sentenced to an additional mandatory fine of $500, and an additional mandatory term of imprisonment of forty-eight hours; provided, however, that the total term of imprisonment for a person convicted under this section shall not exceed thirty days. *Notwithstanding any other law to the contrary, any conviction for driving under the influence of intoxicating liquor under this section or section 291–4.4 shall be*

*considered a prior conviction for purposes of imposing sentence under this section.*
(Emphasis added.)
As stated in *Domingues,*
HRS § 291–4 ... was amended by Act 189 and, as amended, was in effect from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433. Act 189 amended HRS § 291–4 by increasing the amount of community service hours required for those convicted of more than one offense of driving under the influence within five years. *See* 2000 Haw. Sess. L. Act 189, Part II, § 22 at 404.
HRS § 291–4.4 ... was amended by Act 189 and was in effect as amended from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433. Act 189 amended HRS § 291–4.4 to include sentencing provisions, requiring, *inter alia,* the revocation of an offender's driver's license for a minimum of one year, a minimum imprisonment of ten days, and referral to a substance abuse counselor. *See* 2000 Haw. Sess. L. Act 189, Part II, § 21 at 405.
....
Effective January 1, 2002, Act 189 repealed HRS § 291–4 and HRS § 291–4.4 and, simultaneously, HRS § 291E–61, entitled "Operating a Vehicle Under the Influence of an Intoxicant," became effective. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433.
106 Hawai'i at 484 n. 5, 107 P.3d at 413 n. 5.

J.). *Because the charges against Domingues rested on the stand-alone provision of HRS § 291–4.4, see supra,* and HRS § 291–4.4 incorporated the three conviction/ten-year requirement as elements, the majority's discussion, as it pertained to Domingues, was, as the petitioner aptly pointed out, "dicta."

## C.

In *Domingues* the "element" proposition imposed by the majority "was not argued or briefed by the parties, or decided by the [circuit] court. No factual basis exist[ed] in the record for [its] application[.]" 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.). I believe the foregoing matters constitute compelling justification for reversing that part of the decision pertaining to charges brought under HRS § 291–4.4 against Domingues. *See State v. Garcia,* 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001) (stating that "a court should 'not depart from the doctrine of stare decisis without some *compelling justification*' " (quoting *Hilton v. South Carolina Pub. Ry. Comm'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis in original) (other citation omitted))).

Alternatively, the majority's construction of HRS § 291–4.4 and HRS § 291E–61 should be corrected on the grounds set forth above. *See State v. Brantley,* 99 Hawai'i 463, 465, 56 P.3d 1252, 1254 (2002) (explaining that "this court has long recognized, we not only have the right but are entrusted with a duty to examine the former decisions of this court and, when reconciliation is impossible, to discard our former errors" (citations omitted), overruling *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998)). Therefore, I would reverse that portion of the *Domingues* decision concluding that HRS § 291–4.4 as it pertained to Domingues was substantially re-enacted, vindicating the circuit court's decision that Domingues could not be charged under a statute that had already been repealed.

## VI.

As noted before, in *Kekuewa,* the petitioner filed an application for writ of certiorari on November 6, 2006, requesting that this court review the August 10, 2006 decision of the ICA, reversing the March 22, 2005 judgment of the district court of the first circuit (district court) adjudging Respondent/Defendant–Appellee Philip Kala Kekuewa, III (Kekuewa) guilty of OVUII. In *Kekuewa,* the oral charge alleged the OVUII charge was a "second offense." 112 Hawai'i at 271, 145 P.3d at 814.

At the close of the petitioner's case in chief, the petitioner sought to move into evidence a certified court abstract of Kekuewa's traffic record and a certified court calendar reflecting a prior OVUII conviction of Kekuewa. *Id.* at 272–73, 145 P.3d at 815–16. The petitioner offered the abstract and calendar for the purpose of "proving the elements of a prior offense in the case-in-chief rather than at sentencing" under *Domingues. Id.* The district court ruled that the abstract and calendar were admissible to "introduce evidence as to the subsequent [OVUII]" over Kekuewa's objections. *Id.* at 273, 145 P.3d at 816. After the petitioner rested, Kekuewa moved for a judgment of acquittal, but the motion was denied. *Id.* After the close of all evidence at trial, Kekuewa brought a "motion to dismiss based on a defective charge." *Id.* at 274, 145 P.3d at 817.

Kekuewa was charged as follows:

[Kekuewa], on or about the 15th day of April 2004, in the City and County of Honolulu, State of Hawaii, island of Oahu, you did *operate or assume actual physical control of a vehicle while under the influence of alcohol in an amount sufficient to impair your normal mental faculties or the ability to care for yourself and guard against casualty thereby violating Section 291E–61 of the [HRS] for your second offense.*

*Id.* at 271, 145 P.3d at 814 (emphasis added). Defense counsel argued that petitioner "did not specify the attendant circumstances in the complaint [with] what he orally charged." *Id.* at 274, 145 P.3d at 817. Defense counsel further argued, "[B]ased on that, the [petitioner's] failure to outline the attendant circumstances in his oral charging of [Kekuewa], we ask the [c]ourt to dismiss the case based on a defective charge." *Id.* The dis-

trict court denied the motion stating, "[M]y notes reflect that at the time of arraignment [petitioner], in fact, did charge, arraign him as a second [offender] and did include the attendant circumstances. That's my specific note that I'm looking at right now. Therefore, I will deny that motion based on that." *Id.* at 275, 145 P.3d at 818. Kekuewa was thereafter convicted of driving under the influence of an intoxicant, in violation of HRS § 291E–61(b)(2) (Supp.2003).

On appeal, the ICA held in essence that the oral accusation, which charged Kekuewa with OVUII "for your second offense" was insufficient under *Domingues,* inasmuch as "an offense that occurs within five years of a prior conviction for an offense under this section[,]" HRS § 291E–61(b)(2), is an attendant circumstance and, thus, an essential element of the OVUII offense which must be alleged in the accusation. *Kekuewa,* 112 Hawai'i at 270–71, 145 P.3d at 813–14.

## VII.

### A.

In the *Kekuewa* certiorari application, the petitioner argued that "notwithstanding [*Domingues* ], this honorable court should clarify that prior convictions pursuant to HRS § 291E–61(b)(1)–(3) *are not essential elements of the offense of OVUII* " (emphasis added) inasmuch as (a) "the plain language and legislative history of HRS § 291E–61(b)(1)–(3) [do] not indicate an intent to make prior convictions an element of the offense of OVUII," (b) "the reasoning in *Domingues* that HRS § 291E–61(b)(1)–(3) are intrinsic and, thus, must be included in a charge pursuant to HRS § 291E–61 is a misapplication of the intrinsic/extrinsic analysis and is contrary to established Hawaii and federal case law," and (c) "because prior convictions have traditionally been considered 'sentencing factors' and because the introduction of prior conviction evidence during the guilty phase of a trial is prejudicial to a defendant, the better interpretation of HRS

§ 291E–61 is that (b)(1)-(3) are sentencing factors rather than an element of the offense of OVUII"; (2) "the ICA erred in reversing [Kekuewa's] conviction rather than remanding for resentencing under HRS § 291E–61(b)(1)"; and (3) "there was sufficient evidence to convict [Kekuewa]."

### B.

On December 14, 2006, this court accepted the petitioner's application for writ of certiorari and ordered that the parties "file a supplemental brief addressing whether this court's interpretation of [HRS] § 291E–61(b) (Supp.2002), in [*Domingues* ], is applicable to the underlying prosecution commenced on October 11, 2004, given the subsequent amendments made to HRS § 291E–61(b) effective January 1, 2004." (Citing 2003 Haw. Sess. L. Act 71, § 1 at 123–24.).

Effective January 1, 2004, Act 71 of the 2003 legislature created a separate statutory section, HRS § 291–61.5, for the felony offense of "Habitually Operating a Vehicle Under the Influence of an Intoxicant"[7] and defined the term "conviction":

(a) *A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:*

(1) The person is a habitual operator of a vehicle while under the influence of an intoxicant; and

(2) The person operates or assumes actual physical control of a vehicle:

(A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(B) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(C) With .08 or more grams of alcohol per two hundred ten liters of breath; or

---

**7.** I note that, in enacting Act 71, by separating the felony offense of "habitually driving under the influence of an intoxicant" from the misdemeanor offenses, the legislature in effect reinstated the separate statutory scheme separating DUI offenses under HRS § 291–4 as petty misdemeanor offenses from the stand alone provision of habitual DUI under HRS § 291–4.4, the repealed statute, under which Domingues had been charged in the *Domingues* case.

(D) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) For the purposes of this section:

"*Convicted three or more times for offenses of operating a vehicle under the influence*" means that, at the time of the behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:

(1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001;

(2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5; or

(3) An adjudication of a minor for a law or probation violation that, if committed by an adult, would constitute a violation of this section or section 291–4, 291–4.4, or 291–7 as those sections were in effect on December 31, 2001, or section 291E–61 or 707–702.5;

that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside. All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.

*A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense,* for offenses of operating a vehicle under the influence of an intoxicant.

(c) Habitually operating a vehicle while under the influence of an intoxicant is a class C felony.

(d) For a conviction under this section, the sentence shall be either:

(1) An indeterminate term of imprisonment of five years; or

(2) A term of probation of five years, with conditions to include:

(A) Mandatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;

(B) Not less than ten days imprisonment, of which at least forty-eight hours shall be served consecutively;

(C) Referral to a certified substance abuse counselor as provided in section 291E–61(d); and

(D) A surcharge of $25 to be deposited into the neurotrauma special fund.

2003 Haw. Sess. L. Act 71, § 1 at 123–24 (emphases added).

In regard to Act 71, the legislature stated,

*The purpose of this measure is to establish a status offense of habitually operating a vehicle under the influence of an intoxicant ....*

. . . .

Your Committee finds that being punished as a status offender rather than receiving an enhanced sentence has distinct implications. *Status offenders receive a specific punishment as long as the offender meets the criteria at the time the offender reoffends.* The offender cannot defeat the charge by having a previous conviction reversed on a subsequent appeal. By contrast, enhanced sentences can be avoided if any prior convictions that are the basis for an enhanced sentence are overturned.

Your Committee believes it is important that the habitually impaired driver understand that he or she will be charged with a felony for any further impaired driving arrests, *even if one of their prior convictions is reversed after their arrest.*

Stand. Comm. Rep. No. 1268, in 2003 Senate Journal, at 1564 (emphases added).

On February 12, 2007, the petitioner filed its supplemental brief. In addressing the foregoing amendments in its supplemental brief, the petitioner argued that the amendments did not impact *Kekuewa*. According to the petitioner, "the plain language and

legislative history of the amendments made to HRS § 291E–61(b), effective January 1, 2004, do not directly or indirectly effect this honorable court's statement in *Domingues* that the condition of prior convictions in HRS § 291E–61(b)(1)–(4) (Supp.2002) 'describes attendant circumstances,' i.e., elements" and that "unless the *Domingues* court's statement is dicta with respect to HRS § 291E–61(b)(1)–(3), then *Domingues* is applicable to the instant case."

Kekuewa filed his supplemental brief on February 13, 2007, essentially agreeing that the amendments were not applicable. In his supplemental brief, Kekuewa argued that (1) "*Domingues* remains applicable to HRS § 291E–61 (Supp.2003)"; (2) the *Domingues* "holding regarding HRS § 291E–61(b)(1) through (b)(3) does not constitute dicta"; (3) "*Domingues* did not misapply the intrinsic/extrinsic analysis"; and (4) "any prejudice based on the prior convictions can and should be prevented." Hence, both parties agree *Domingues* applied in *Kekuewa*.

### C.

As pointed out, the case decided in *Domingues* by the majority was not before the court, *see Domingues*, 106 Hawai'i at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.), but was present in *Kekuewa*. As noted in the *Domingues* dissent, "[t]he majority's holding ... constitutes an advisory opinion to one side on how future cases under the *new* statute may be saved from motions for dismissal." *Id.* at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.) (emphasis in original). While I believed the petitioner was accurate in its reading of the *Domingues* majority opinion, "the due process challenge that Domingues [had] not brought," *id.* at 498, 107 P.3d at 427 (Acoba, J., dissenting, joined by Nakayama, J.), because not germane to the facts in *Domingues*, was germane to the facts in *Kekuewa* and was raised by the respondent in *Kekuewa*.

HRS § 291E–61(b)(1)–(3) expressly charged a petty misdemeanor for designated prior intoxicant convictions, but with differing ranges for terms of imprisonment from forty-eight hours to five days for a first offense, 291E–61(b)(1)(C)(ii); five days to fourteen days, 291E–61(b)(2)(B)(ii) for a second offense; and ten days to thirty days, 291E–61(b)(3)(C) for a third offense; and an additional forty-eight hours imprisonment for a conviction under HRS § 291E–61(b)(4). Hence, in effect, HRS § 291E–61(b)(1)–(3), as it applied at the time of the offense, referred to three separate petty misdemeanor offenses.

### VIII.

As related in *State v. Elliott*, 77 Hawai'i 309, 884 P.2d 372 (1994), in *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242 (1983), this court "held that the failure to allege an essential element of an offense made a charge 'fatally defective.' " 77 Hawai'i at 311, 884 P.2d at 374 (citing *Jendrusch*, 58 Haw. at 280–81, 567 P.2d at 1244 (citations omitted)) (other citations omitted). The *Elliott* court explained that, in *Jendrusch*, this court stated:

> The accusation must sufficiently allege all of the essential elements of the offense charged. This requirement obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint, and the omission of an essential element of the crime charged is a defect in substance rather than of form. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process. This requirement may not be waived or dispensed with, and the defect is ground for reversal, even when raised for the first time on appeal.

*Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Jendrusch*, 58 Haw. at 281, 567 P.2d at 1244 (citations omitted)) (other citation omitted).

As noted before, the *Domingues* majority of this court observed that the "prefatory language of HRS § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes." 106 Hawai'i at 487, 107 P.3d at 416 (citing HRS

§ 702–205) (emphasis added). Thus, in order to convict Kekuewa of HRS § 291E–61(b)(2), the petitioner had to prove beyond a reasonable doubt that Kekuewa (1) "operate[d] or assume[d] actual physical control of a vehicle" (2) "while under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for the person and guard against casualty[,]" *see State v. Cummings*, 101 Hawai'i 139, 143–44, 63 P.3d 1109, 1113–14 (2003), *and* (3) the offense "occur[red] within five years of a prior conviction for driving under the influence of intoxicating liquor under [HRS § 291E–61] or [HRS § ]291–4.4[,]" *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. The petitioner was likewise required to charge these essential elements in order to convict Kekuewa of violating HRS § 291E–61(b)(2). *See Cummings*, 101 Hawai'i at 143–44, 63 P.3d at 1113–14.

Thus, the oral charge alleging a violation of HRS § 291E–61 for Kekuewa's "second offense," failed to sufficiently allege an "essential element[ ]," *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374, of HRS § 291E–61(b)(2), that is, that the instant offense "occur[red] within five years of a prior conviction for driving under the influence of intoxicating liquor under [HRS § 291E–61] or [HRS § ]291–4.4[,]" *see Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. The oral charge, then, failed to apprise Kekuewa of the specific penalties he was subject to under HRS § 291E–61(b)(2).[8] Plainly, the reference only to "a second offense" in the charge against Kekuewa fail[ed] under HRS § 291E–61 to designate the particular petty misdemeanor offense charged and to "sufficiently allege all the essential elements of the offense[.]" *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374 (citations omitted).

Under these circumstances, the failure to charge in the specific section and the operative language therein would not legally apprise a person of the charge brought. Because it failed to do so, the charge against Kekuewa "amount[ed] to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process." *Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112 (internal quotation marks and citations omitted). The ICA was thus correct in concluding that "the oral charge in this case was defective, and that [Kekuewa's] oral motion to dismiss should have been granted." 112 Hawai'i at 277, 145 P.3d at 820.

As noted before, the majority opinion in *Domingues* had in effect instructed the petitioner in *Kekuewa* "on how future cases under the *new* statute[, HRS § 291E–61(b)(1)–(4) (Supp.2001),] may be saved from motions for dismissal." 106 Hawai'i at 499, 107 P.3d at 428 (Acoba, J., dissenting, joined by Nakayama, J.) (emphasis in original). The petitioner in *Kekuewa* failed to follow that advice as to the petty misdemeanor offense in HRS § 291E–61(b)(2), and, so, the conviction in *Kekuewa* was required to be reversed and the motion to dismiss brought by Kekuewa, sustained.

### IX.

Furthermore, I note that after excising "for your second offense" from the oral charge in *Kekuewa*, the remaining language, that Kekuewa "did operate or assume actual physical control of a vehicle while under the influence of alcohol in amount sufficient to impair [his] normal mental faculties or the ability to care for [him]self and guard against casualty thereby violating Section 291E–61 of the [HRS,]" *Kekuewa*, 112 Hawai'i at 271, 145 P.3d at 814, contains *only the definition*

---

8. As the ICA stated in its opinion, "[t]he five-year time period omitted from the oral charge was a critical part of the HRS § 291E–61(b)(2) attendant circumstances, one with especial resonance in this case in light of [Kekuewa's] several prior [OVUII] convictions." *Kekuewa*, 112 Hawai'i at 277, 145 P.3d at 820. The ICA reiterated that "[i]ts inclusion was required, and 'that requirement is not satisfied by the fact that [Kekuewa] actually knew [the essential elements of the offense charged] and was not misled by the failure to sufficiently allege all of them.' " *Id.* (quoting *Cummings*, 101 Hawai'i at 143, 63 P.3d at 1113) (other citation omitted) (some brackets in original and some added). Furthermore, the ICA observed that " 'citing to a statutory reference does not cure a charge that merely states an element of the offense in generic terms.' " *Id.* (quoting *Cummings*, 101 Hawai'i at 143, 63 P.3d at 1113 (citing *Elliott*, 77 Hawai'i at 311, 884 P.2d at 374)).

of "[o]perating a vehicle under the influence of an intoxicant" under HRS § 291E–61(a), and does not charge an offense.

The fact that no prior convictions would be mentioned in the language of the complaint after excision of the "second offense" language does not save the complaint under HRS § 291E–61(b)(1). Under the statutory scheme there is no generic OVUII offense. Hence the remaining language cannot be construed to allege either a "first offense" or an "offense not preceded within a five-year period by a conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)," alternative elements for a conviction under HRS § 291E–61(b)(1). See Domingues, 106 Hawai'i at 487, 107 P.3d at 416.

The requirement of charging a "first offense" stems from the necessity to differentiate the particular offense being charged from the three misdemeanor versions of HRS § 291E–61. By failing to allege either alternative in 291E–61(b)(1) or any of the other versions of the 291E–61 offense, the oral charge failed to apprise Kekuewa of the specific penalties for which he was in jeopardy under the several provisions of HRS § 291E–61(b)(1)–(4). Consequently, the remaining language cannot be construed to allege a "first offense."

Relatedly, in State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983), this court "refined the Jendrusch rule by adopting the 'liberal construction standard' for post-conviction challenges" to indictments. Elliott, 77 Hawai'i at 312, 884 P.2d at 375 (citation omitted). Under Motta, this court "will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." 66 Haw. at 91, 657 P.2d at 1020. However, as stated in Elliott, the Motta court "expressly noted that ... even under [the liberal construction standard], the charge in Jendrusch would be fatally defective for failing to allege an essential element of the offense." 77 Hawai'i at 312, 884 P.2d at 375 (citing Motta, 66 Haw. at 92, 657 P.2d at 1020–21) (emphasis added). The Motta court reached that conclusion "despite the fact that the charge at issue in Jendrusch had referred to the statute defin-

ing the offense." Id. (citing Jendrusch, 58 Haw. at 280, 567 P.2d at 1243–44).

This court has stated that "an oral charge, complaint, or indictment that does not state an offense contains within it a substantive jurisdictional defect, rather than simply a defect in form, which renders any subsequent trial, judgment of conviction, or sentence a nullity." Cummings, 101 Hawai'i at 142, 63 P.3d at 1112 (citing State v. Israel, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (other citations omitted)) (emphasis added). Because the oral charge in this case "failed to state a material element of [a violation of HRS § 291E–61(b)(1)] that the prosecution was required to prove, it failed to state an offense and, therefore, was fatally defective." Id. at 145, 63 P.3d at 1115. Accordingly, the "court lacked subject matter jurisdiction to preside" over the case. Id. As such, I believe the charge against Kekuewa was properly dismissed in its entirety for the additional grounds set forth above.

### X.

In the instant case, on January 29, 2003, Ruggiero was convicted of OVUII, HRS § 291E–61(a)(1) (Supp.2002). Ruggiero appealed his conviction. While his appeal was pending before this court, on March 10, 2004, Ruggiero allegedly operated or assumed actual physical control of a vehicle while under the influence of an intoxicant, in violation of HRS § 291E–61.

On March 19, 2004, this court issued a summary disposition order reversing Ruggiero's January 29, 2003 conviction. State v. Ruggerio, No. 25671, SDO, 104 Hawai'i 147, 85 P.3d 1098 (Mar. 19, 2004), 2004 WL 542214. It was held that the prosecution's failure to prove an essential element of the offense required reversal of Ruggiero's conviction.

On April 19, 2004, Ruggiero was charged with OVUII, in violation of "HRS § 291E–61" (Supp.2003), for the events that took place on March 10, 2004. The complaint stated:

That on or about the 10th day of March, 2004, ... [Ruggiero] did operate or assume actual physical control of a vehicle

while under the influence of an intoxicant meaning that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of [OVUII] in violation of Section 291E–61 of the [HRS].

On April 29, 2004, the notice and judgment of the March 19, 2004 summary disposition order was filed.

On September 8, 2004, a bench trial was held in the district court of the second circuit (the court) as to the March 10, 2004 events. The court found Ruggiero guilty of OVUII, HRS § 291E–61(b) and (c).[9]

At the sentencing hearing, in response to the court's request for sentencing recommendations, Plaintiff–Appellee State of Hawai'i (the prosecution) related that according to Ruggiero's "abstract," this was his second offense as he had a "prior [OVUII] in January 2003 within the five-year period." The court held an "enhanced sentencing hearing." It admitted into evidence Ruggiero's abstract which indicated that he had been convicted of OVUII on January 29, 2003. The parties also stipulated to this court's March 19, 2004 summary disposition order, which reversed Ruggiero's January 29, 2003 conviction, and

that the notice and judgment of the summary disposition order was filed on April 19, 2004. The court scheduled a further sentencing hearing and on September 30, 2004, the court sentenced Ruggiero apparently as a *second* time offender pursuant to HRS § 291E–61(b)(2), based on the prior January 29, 2003 conviction for OVUII.

## XI.

Ruggiero argues that the court erred by sentencing him as a second-time offender pursuant to HRS § 291E–61(b)(2). Citing *Sinagoga*, he maintains that (1) in order to give an "enhanced sentence, the proper procedures must be followed[,]" and here, because "the prior conviction was reversed[,]" the prosecution failed to prove an essential element of the offense, that a prior conviction was validly entered; and (2) "we are plainly dealing here with a sentencing statute, not a 'status offense' " and as such "any argument based on 'status offense' case law is inapposite and unavailing." In response, the prosecution contends that "[t]he subsequent invalidity of a prior conviction is irrelevant[.]" But in light of *Domingues* and *Kekuewa*, the result here is foreordained on the preliminary ground that the complaint was insufficient to charge an offense.[10]

9. HRS § 291E–61 stated in pertinent part:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty.
. . . .

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of probation or suspension of sentence:
. . . .

(2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a) by:

(A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;

(B) Either one of the following:

(i) Not less than two hundred forty hours of community service work; or

(ii) Not less than five days but not more than fourteen days of imprisonment of which

at least forty-eight hours shall be served consecutively;

(C) A fine of not less than $500 but not more than $1,500; and

(D) A surcharge of $25 to be deposited into the neutrama special fund;
. . . .

(c) Notwithstanding any other law to the contrary, any:

(1) Conviction under this section or section 291E–4(a);
. . . .

shall be considered a prior conviction for purposes of imposing sentence under this section. Any judgment on a verdict or a finding of guilty, a plea of guilty or nolo contendere, or an adjudication in the case of a minor, that at the time of the offense has not been expunged by pardon, reversed, or set aside shall be deemed a prior conviction under this section.

10. It should be noted that assuming *arguendo* that HRS § 291E–61 creates a "status offense," Ruggiero argues that "there is considerable doubt as to whether being a 'status offense' would make it constitutionally permissible to use an invalidated conviction." Ruggiero notes that

## XII.

At trial, defense counsel did not challenge the insufficiency of the complaint. In that regard, "[i]f the substantial rights of the defendant have been affected adversely, the error will be deemed plain error." *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (quoting *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (other citation omitted)). This court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Id.* (quoting *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642 (other citations omitted)). Thus, this court may recognize plain error regarding the insufficiency of the complaint inasmuch as it "seriously affec[ed] the fairness ... of [the] judicial proceeding[.]" *Id.* (citations omitted).

## XIII.

As required of the petitioner in *Kekuewa*, in order to convict and sentence Ruggiero of HRS § 291E–61(b)(2), the prosecution had to prove beyond a reasonable doubt that Ruggiero (1) "operate[d] or assume[d] actual physical control of a vehicle" (2) "while under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for the person and guard against casualty[,]" *see Cummings*, 101 Hawai'i at 143–44, 63 P.3d at 1113–14, *and* (3) the offense "occur[red] within five years of a prior conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)[,]" *Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. The prosecution was likewise required to charge these essential elements in order to convict Ruggiero of violating HRS § 291E–61(b)(2). *See Cummings*, 101 Hawai'i at 143–44, 63 P.3d at 1113–14.

To reiterate, the complaint alleged only a violation of HRS § 291E–61. However, as in *Kekuewa*, the complaint failed to sufficiently allege the essential element, "occur[red] within five years of a prior conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)[,]" *see Elliott*, 77 Hawai'i at 311, 884 P.2d at 374, for a conviction of HRS § 291E–61(b)(2), *see Domingues*, 106 Hawai'i at 487, 107 P.3d at 416. Therefore, the complaint failed to apprise Ruggiero of which specific penalties and, thus, the offense he was subject to under HRS § 291E–61. The complaint, then, was defective and the court erred in convicting and sentencing Ruggiero pursuant to HRS § 291E–61(b)(2) for the same reasons decided in *Kekuewa*. *See Elliott*, 77 Hawai'i at 311, 884 P.2d at 374; *see also supra*.

## XIV.

Furthermore, as in *Kekuewa*, the language of the complaint that Ruggiero "did operate or assume actual physical control of a vehicle while under the influence of an intoxicant meaning that he was under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of [OVUII] in violation of Section 291E–61 of the [HRS,]" *contains only the definition of OVUII under HRS § 291E–61(a), and does not itself charge an offense*. As a result, the absence of an allegation that the offense was a "first offense" or an "offense not preceded within a five-year period by a conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)[,]" alternative elements for a conviction of HRS § 291E–61(b)(1), *see Domingues*, 106 Hawai'i at 487, 107 P.3d at 416, made the charge a nullity, *see Cummings*, 101 Hawai'i at 142, 63 P.3d at 1112. As indicated in the discussion *supra*, the language with which Ruggiero was charged only defines OVUII, inasmuch as the complaint failed to apprise Ruggiero of the specific

---

in *Lobendahn*, this court "addressed the question of status offenses and permitted the use of a vacated conviction to establish the requisite felon status for the offense[.]" However, Ruggiero argues that "*Lobendahn* did not even consider the constitutional questions" and was "merely a case of statutory construction." Ruggiero points out that *Lobendahn* relied on *Liles*, which, according to Ruggiero, "likewise did not even consider the constitutional object to use of invalid convictions" and was called into question by *United States v. Bagley*, 837 F.2d 371, 374–75 (9th Cir. 1988). Because I believe the prosecution failed to charge an offense as a *preliminary* matter, this question need not be reached.

version of the OVUII offense to which he was subject under HRS § 291E–61. Also, as noted before, the requirement to charge a first offense stems from the necessity to identify the version of HRS § 291E–61 being charged.

It should be noted that, in *Elliott,* this court reversed the defendant's conviction for assault against a police officer because of the failure to charge an essential element of the crime. 77 Hawai'i at 312–13, 884 P.2d at 375–76. However, "because all of the essential elements of assault in the third degree were alleged in the oral charge and proven at trial[,]" this court concluded that "the appropriate remedy for [the defendant's] post-conviction challenge to the defective charge [was] to remand the case for entry of judgment of conviction of assault in the third degree and for resentencing in accordance therewith." *Id.* at 313, 884 P.2d at 376.

Unlike *Elliott,* in this case, the complaint failed to allege an essential element for a conviction of HRS § 291E–61(b)(1), namely that an offense was a "first offense" or an "offense not preceded within a five-year period by a conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)[.]" *See Domingues,* 106 Hawai'i at 487, 107 P.3d at 416. As stated before, there is no generic OVUII offense. Also, as this court has stated, "[t]o allow a mere statutory reference to cure the omission of essential elements would completely vitiate the rule of law developed in *Jendrusch, Motta,* and *[State v.] Yonaha,* [68 Haw. 586, 723 P.2d 185 (1986) ]." *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374.

As in *Kekuewa,* because the complaint in this case "failed to state a material element of [a violation of HRS § 291E–61(b)(1) ] that the prosecution was required to prove, it failed to state an offense and, therefore, was fatally defective." *Cummings,* 101 Hawai'i at 145, 63 P.3d at 1115; *see also supra.* Accordingly, as in *Kekuewa,* the "court

lacked subject matter jurisdiction to preside" over the case, *Cummings,* 101 Hawai'i at 145, 63 P.3d at 1115, and the charge against Ruggiero must be dismissed, *see Elliott,* 77 Hawai'i at 311, 884 P.2d at 374.

## XV.

It is observed that the plurality agrees that "[t]he complaint charging Ruggiero with a violation of HRS § 291E–61 was ... insufficient as a matter of law in charging a violation of HRS § 291E–61(a) and (b)(2)." Plurality opinion at 239, 160 P.3d at 715. However, the plurality concludes that "the complaint was sufficient to support a conviction and sentence as a first-time violator of HRS § 291E–61(a) and (b)(1)" and then remands for "entry of a judgment of conviction for operating a vehicle under the influence of an intoxicant with no prior offenses, in violation of HRS § 291E61(a) and (b)(1), and for resentencing in accordance therewith." [11] Plurality opinion at 241, 160 P.3d at 717.

The plurality does concede that "because the attendant circumstance of no prior convictions within five preceding years, as set forth in HRS § 291E–61(b)(1), is elemental, it *should* be alleged in the charge and proved at trial." [12] Plurality opinion at 240, 160 P.3d at 716 n. 19 (emphasis in original). But despite the elemental status of "a first offense," the plurality contends that "on its face, the complaint can reasonably be construed to charge the crime of [OVUII] *as a first offense,* in violation of HRS § 291E–61(a) and (b)(1)" as it "plainly states the elements set forth in *HRS § 291E–61(a)*[.]" Plurality opinion at 240, 160 P.3d at 716 (emphases added). But this is inconsistent with the *Domingues* majority's conclusion that "*HRS § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances* that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as

11. Likewise, Justice Nakayama's concurring and dissenting opinion "agree[s] with the [plurality's] ultimate decision to vacate Ruggiero's conviction and sentence under HRS §§ 291E–61(a) and (b)(2), and remand for entry of judgment and for resentencing in accordance with HRS §§ 291E–61(a) and (b)(1)." Concurring and dissenting opinion at 242, 160 P.3d at 718.

12. It should be noted that Justice Nakayama's concurring and dissenting opinion agrees with the plurality that HRS §§ 291E–61(a) and (b)(2)-(3) "must be construed as creating separate status offenses" but disagrees "that HRS § 291E–61(b)(1) also describes attendant circumstances." Concurring and dissenting opinion at 241, 160 P.3d at 717.

a whole describes[,]" 106 Hawai'i at 487, 107 P.3d at 416 (citing HRS § 702–205) (emphasis added), and, thus, are elements that must be alleged, *see Cummings,* 101 Hawai'i at 143–44, 63 P.3d at 1113–14, and proved beyond a reasonable doubt by the prosecution, HRS § 701–114 (1993).

In that regard, the plurality's contention that "given the unique nature of the element—. . . that is, the absence of any priors—. . . the import of HRS § 291E–61[ ] is implicit in the charge[,]" plurality opinion at 240, 160 P.3d at 716, contravenes the long standing principle, as stated *supra,* that "[t]he accusation must sufficiently allege *all* of the essential elements of the offense charged[,]" *Elliott,* 77 Hawai'i at 311, 884 P.2d at 374 (quoting *Jendrusch,* 58 Haw. at 281, 567 P.2d at 1244 (citations omitted)) (other citations omitted); *see also Cummings,* 101 Hawai'i at 143–44, 63 P.3d at 1113–14, and is contrary to *Domingues.* With all due respect, dispensing with an element on the purported ground that it is "unique [in] nature" or "implicit in the charge," *see* plurality opinion at 240, 160 P.3d at 716, is arbitrary because supported only by the desired result.

Moreover, the plurality's assertion that Ruggiero "impliedly acknowledges that the complaint was sufficient to charge [OVUII] as a first-time offense when he concedes that he is subject to sentencing as a first time offender under HRS § 291E–61(b)(1)[,]" plurality opinion at 240, 160 P.3d at 716, is a misreading of Ruggiero's position. Ruggiero argues that the prior conviction is to be considered only at the time of sentencing, and did not contend at all that based on the insufficiency of the complaint he would alternatively "be subject to sentencing under HRS § 291[E–61](b)(1) as a first-time offender." Thus it is a misstatement to characterize Ruggiero's argument pertaining to sentencing as an "implied[ ] acknowledg[ment]" that the complaint was "sufficient" to charge a first offense. Plurality opinion at 240, 160 P.3d at 716.

In any event, "that the accused actually knew [the essential elements of the offense charged] and was not misled by the failure to sufficiently allege all of them" does not satisfy the requirement that "the prosecution must prove beyond a reasonable doubt all of the essential elements of the offense charged, [and must also] sufficiently allege them[.]" *Cummings,* 101 Hawai'i at 143, 63 P.3d at 1113 (quoting *Israel,* 78 Hawai'i at 73, 890 P.2d at 310 (other citations omitted)) (brackets omitted). Thus, contrary to the plurality's contention, *see* plurality opinion at 240, 160 P.3d at 716, Ruggiero's argument regarding the complaint is not pertinent to determining its sufficiency.

Finally, irrespective of whether the prosecution had the discretion to charge Ruggiero under HRS § 291E–61(b)(1), *see* plurality opinion at 240, 160 P.3d at 716 (stating that "it was within the discretion of the prosecution to pursue a sufficiently articulated charge of [OVUII] as a second-time *status* offender, it would also have fallen within the prosecution's discretion to charge the lesser included offense of [OVUII] as a first-time offender"), the fact remains that the complaint failed to allege the essential element of "first offense" or an "offense not preceded within a five-year period by a conviction for an offense under [HRS § 291E–61] or [HRS § ]291E–4(a)," to convict Ruggiero of violating HRS § 291E–61(b)(1). As indicated before, the necessity of pleading "a first offense" is to enable the defendant to discern which version of the offense among those set forth in HRS § 291E–61(b)(1)–(4) is being charged,[13] and, as in *Kekuewa,* the charge

---

13. Contrary to Justice Nakayama's concurring and dissenting opinion, apprising a defendant of the specific penalties to which he or she is subject appears to be a "practical reason why a defendant must be informed that the offense for which he or she is charged with is his or her first offense." Concurring and dissenting opinion at 242, 160 P.3d at 718. Furthermore, the concurring and dissenting opinion's assertion that "a defendant is uniquely aware of his or her status as a first-time offender" is irrelevant inasmuch as under the plurality's view, the prosecution has "the discretion to decide which statutory subsection to charge the accused with[.]" *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985). The plurality contends that the prosecution has the discretion to charge a defendant as a first-time offender under HRS § 291E–61(b)(1), despite the presence of a "prior conviction." *See id.* The invalidity of the concurring and dissenting opinion's assertion in such a situation is illustrated by the fact that Ruggiero was not a

does not allege an offense by simply refer-
ring to the definition of OVUII.

"first-time offender" under HRS § 291E–61(c) insofar as he had a conviction that was not reversed as of March 10, 2004, when the events in this case transpired. *See supra.* Thus, Rug-giero could not be "uniquely aware of his ... status as a first-time offender," concurring and dissenting opinion at 242, 160 P.3d at 718, be-cause in fact, he was not.